IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JUSTICE FOR THE NEXT GENERATION, et al., | )<br>)<br>) |
| *Plaintiffs*, | )<br>) |
| v. | )<br>) **Civil Action No. 1:20-cv-00998** |
| TERRY JOHNSON, individually and in his official capacity as Alamance County Sheriff, et al., | )<br>)<br>)<br>) |
| *Defendants*. | )<br>)<br>) |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT[1]**

On October 31, 2020—the last day of early voting in North Carolina—Plaintiffs were pepper sprayed by GPD officers and ACSO deputies during a peaceful March to the Polls. When Plaintiffs filed their First Amended Complaint ("FAC") in December 2020, they did not know the identities of all of the officers and deputies who violated their rights that day (the "Doe Defendants"). After bringing this lawsuit, Plaintiffs conferred with the Defendants, and separately conducted their own investigation, using (among other things) contemporaneous bodycam footage obtained from law enforcement officials present that day, to identify the Doe Defendants. With the benefit of information that was not available

---

[1] Because Defendants made similar arguments, Plaintiffs file this reply in response to the oppositions filed by both the Alamance Defendants, Case No. 20-cv-998, ECF 57, and the Graham Defendants, Case No. 20-cv-998, ECF 58.

1

to them when they filed the FAC, on November 1, 2021—the agreed-upon deadline for the parties to amend their pleadings—Plaintiffs moved for leave to file a Second Amended Complaint ("SAC"). And while the SAC contains certain new material the now-identified Does are not "new" Defendants. They were already a part of this case. The only difference is that Plaintiffs now know their names.

The SAC does add three additional plaintiffs who were also injured by Defendants on October 31, 2020, and two claims for false arrest that Plaintiffs could not have brought when the FAC was filed because the criminal charges, which have now been dismissed, were then pending. The SAC also contains additional claims under the First Amendment and Article I, § 14 of the North Carolina constitution, brought by Plaintiff Avery Harvey. These claims stem from the City of Graham's decisions to enact a protesting ordinance that violates the First Amendment and Article I, §14 and then to unconstitutionally arrest Harvey in March and April of 2021. To be clear: these Free Speech claims are the *only* parts of the SAC that address events that occurred after October 31, 2020. This Court should permit these claims to be added because they concern an ongoing pattern of speech suppression by the Graham Defendants that is part-and-parcel of the Graham Defendants' conduct on October 31, 2020.

Thus, each of the additional claims in the SAC either flows directly from Defendants' actions on October 31, 2020 or is logically related to the events of October 31, 2020. Defendants oppose these additions because they think this will create "lawsuits within a lawsuit." Alamance Def. Resp., ECF 57 at 7. This is a red herring. The core of this

case remains simple: Defendants have used unjustifiable force to prevent Plaintiffs from exercising their constitutional right to free speech and free assembly, simply because Plaintiffs hold views that Defendants do not agree with. Defendants stopped Plaintiffs from engaging in a lawful and constitutionally-protected March to the Polls in October 2020, and have continued to deny them the right to peaceably assemble and protest on several other occasions since. The most efficient way for these related claims to be resolved is to proceed through discovery, dispositive motions, and trial in a single lawsuit.

For the reasons set forth below and in Plaintiffs' motion for leave, this Court should grant Plaintiffs' motion to file the SAC.

## I. Defendants Provide No Basis For Departure from the General Rule that Leave to Amend Should Be Freely Granted.

Leave to amend under Federal Rule of Civil Procedure 15(a) "shall be freely given when justice so requires." Leave to amend should be denied "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). An amendment is not prejudicial if it adds a theory of recovery to facts already pleaded, since the defendant was apprised of the events giving rise to the action. *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).

Nor is amendment prejudicial when a new claim complies with Federal Rule of Civil Procedure 20(a)'s requirements. *See Wilmington Tr., Nat'l Ass'n v. Nat. Gen. Ins. Co.*, No. 21-cv-207, 2021 WL 4951968 at *2 (M.D.N.C. Oct. 25, 2021) (noting that courts must consider both Rule 15(a) and Rule 20 when deciding a motion to amend that names

3

additional parties). Under Rule 20, new claims are proper if they "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" as the existing claims. *See* Fed. R. Civ. P. 20(a), (b). New claims satisfy Rule 20's requirements if they are "logically related" to existing claims. *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 325 (4th Cir. 2021). This determination should be made using a "case-by-case approach" based on a "flexib[le] … standard [that] enables the federal courts to promote judicial economy by permitting all reasonably related claims … to be tried in a single proceeding." 7 Charles Alan Wright, et al., *Federal Practice and Procedure* § 1653 (3d ed. 2001). That is because the Federal Rules contemplate "the broadest possible scope of action consistent with fairness to the parties"; therefore "joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

Here, Plaintiffs have carried their modest burden to show that conditions for amendment are satisfied and Defendants' arguments to the contrary are without merit.

### A. The SAC satisfies the requirements for leave to amend.

First, the SAC clarifies the identities and actions of officers and deputies who were already part of this case as Doe Defendants. This is consistent with this Court's May 21, 2021 Order. Case No. 20-cv-997, ECF 75 (the "May 21 Order"). That Order denied Plaintiffs' motion for discovery of the identities of the Doe Defendants because the FAC did not sufficiently detail "which [Doe Defendants] did what" on October 31, 2020 and "failed to differentiate the alleged wrongful conduct between [the Doe] Defendants." *Id.* at 5, 4. Because the Court required more detail about the Doe Defendants, the SAC

provides more detail. Where Plaintiffs were able to identify Doe Defendants by name and learn what they did on October 31, 2020, Plaintiffs added that information. If Plaintiffs were not able to identify Doe Defendants, they are no longer named in the SAC. There can be no serious argument that providing information regarding the identities and actions of individuals formerly identified as Does is prejudicial.

Second, the SAC names three additional Plaintiffs: Brendan Kee, Corey Moore, and Jasmine Breeden. Each was injured on October 31, 2020 as a result of Defendants' unlawful actions. Joinder of these Plaintiffs' claims is well within the scope of Rule 20 because they arise from the same event as the other Plaintiffs' claims: the October 31, 2020 March. As the Graham Defendants acknowledge, the March forms "the common nucleus of operative facts and circumstances" in this case. Graham Def. Resp., ECF 58 at 13. Thus, these claims are not only "logically related" to the claims in the FAC, *Courthouse News Serv.*, 2 F.4th at 325, they involve identical questions of law and fact. The addition of these Plaintiffs cannot cause Defendants prejudice when Defendants have been "from the outset made fully aware of the events giving rise to the action." *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980).

Third, the SAC adds false arrest claims by Plaintiffs Cook and Harvey. Both were unlawfully arrested on October 31, 2020. Plaintiffs were unable to include these claims in their FAC because, at the time, the criminal charges against Cook and Harvey had not been dismissed. Now they have been. The addition of neither claim prejudices Defendants.

Fourth, the SAC adds claims under the First Amendment and Article I §14 of the North Carolina Constitution that accrued after the October 31, 2020 March. These claims arise from the City of Graham's decisions to enact a speech-suppressive ordinance and then arrest Plaintiff Harvey twice under that ordinance—once in April 2021 and once in May 2021. That the ordinance's enactment and Harvey's arrests occurred after October 31, 2020 is no barrier to amendment here because "'absolute identity of all events is unnecessary' for joinder." *Courthouse News Service*, 2 F.4th at 325. Rather, "two claims arise from the same transaction—and therefore can be joined in the same action—when there is a 'logical relationship' between them." *Id.* Here, the City of Graham enacted the ordinance response to the October 31, 2020 March.[2] Thus, these claims are part of a logically related sequence of events: the City of Graham's and its officials' ongoing pattern of suppressing speech that that they do not like.

### B. Defendants' arguments in opposition are meritless.

Defendants contend the SAC is an "exponential expansion" of the complaint that "add[s] dozens of parties and increase[is] the number of discrete claims to an astronomical 3,692 discrete claims." Graham Def. Resp., ECF 58 at 1; *see* Alamance Def. Resp., ECF 57 at 4 (objecting that "Plaintiffs seek to cast a wider net" with the SAC). This is hyperbole, and incorrect. The Graham Defendants appear to arrive at this inflated number by excluding claims asserted against Doe Defendants in the FAC while counting them as

---

[2] Contrary to the Graham Defendants' assertions, Graham Def. Resp., ECF 58 at 6, the SAC does not include any claim arising from the arrests that occurred at the Alamance County Board of Commissioners meeting on November 16, 2020.

6

"new" claims in the SAC. But as previously noted, claims against Doe Defendants were already alleged in the FAC. The number of claims asserted in this litigation did not increase just because Plaintiffs now know the names of these individuals.

In any event, as the Graham Defendants' own case law confirms, joinder of multiple individual claims against multiple individual defendants would be improper if those claims are "*unrelated*." Graham Def. Resp., ECF 58 at 7 (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (emphasis added)). But here the claims *are* related. They all either arise directly from the events of October 31, 2020 or are "logically relat[ed]" to those events. *Courthouse News Service*, 2 F.4th at 325.

Moreover, although the Graham Defendants complain that this is "already an over-sized lawsuit," Graham Def. Resp., ECF 58 at 15, federal courts routinely allow cases as or more complex than this one to proceed. *See, e.g.*, *Fernandez v. Borough of Roseland*, 2021 WL 3930718, *8–9 (D.N.J. Sept. 2, 2021) (appropriate to address in one suit multiple individual plaintiffs' claims of race discrimination against multiple individual and municipal defendants); *Green v. Padilla*, 484 F.Supp.3d 1098, 1150–52 (D.N.M. 2020) (proper to consider together multiple prisoners' various claims against multiple defendants because, though the complaint "lodge[d] factual allegations specific to each" prisoner, each "allege[d] injuries arising from the same general policy of ignoring rampant sexual assaults at [the prison]").

As to the Graham Defendants' suggestion that Plaintiffs should bring their additional claims in new lawsuits, *see* Graham Def. Resp., ECF 58 at 13, that would be

7

inefficient for all parties and the Court. Although Plaintiffs are prepared to pursue their claims in whatever manner the Court deems most appropriate, Plaintiffs respectfully submit that it is more efficient for the parties and this Court to resolve the issues Plaintiffs raise in one lawsuit rather than multiple cases with overlapping (and possibly conflicting) discovery, dispositive motions, and trial schedules. The Federal Rules are designed "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Splintering this litigation into multiple concurrent actions would do just the opposite. Recognizing this, the Court has already indicated its preference to consolidate all related matters in this litigation. *See* ECF No. 17 (consolidating matters into lead case). Accordingly, the SAC brings all related claims in the same complaint so that they may be adjudicated in a single action. This promotes judicial economy, and—addressing the Defendants' concern that the case is "unmanageable"—makes efficient use of the parties' and the Court's resources. *See. Gibbs*, 383 U.S. at 724 (1966).

The Graham Defendants also object on the grounds that the SAC is too threadbare to pass *Iqbal*/*Twombly* muster. Graham Def. Resp., ECF 58 at 11. But the Court already ruled that the FAC was sufficiently pleaded,[3] and the SAC contains more detailed

---

[3] Parts of the Graham Defendants' response in opposition to Plaintiffs' motion for leave to amend are in reality an attempt to re-litigate issues the Court has already decided. For example, the Graham Defendants argue that the SAC fails to give Defendant Cole "notice of any actions she allegedly did to warrant individual liability or liability for the City of Graham" concerning the October 31, 2020 March. Graham Def. Resp., ECF 58 at 10. To be clear: the SAC adds no new claims against Defendant Cole related to the October 31 March. And some of the SAC paragraphs the Graham Defendants attack as inadequate are substantively identical to paragraphs this Court already ruled were adequately pleaded in the FAC. As just one example, the Graham Defendants identify SAC paragraph 256 as

8

allegations than its predecessor. The SAC provides significant additional details. It identifies the previously unidentified Does while dropping prior allegations against Does whose identities still have not been confirmed, demonstrating Plaintiffs' good faith effort to keep the pleadings in conformity with the evidence obtained through discovery. *Compare* No. 20-cv-997, Dkt. 75 at 4 (noting that the FAC named "40 to 70" Doe Defendants) with SAC (identifying only 33 former Doe Defendants by name, with allegations of specific conduct as to each). While the SAC is certainly longer than its predecessor, this is because Plaintiffs have learned more about their claims and have attempted to provide as much information as they can in light of what they have learned. Notwithstanding Defendants' characterization of the case as unmanageable, the SAC is proof that the opposite is true: through ongoing discovery Plaintiffs have learned the identities of the previously unidentified individuals, provided specific examples of their wrongful conduct, and have expanded on pleadings the Graham Defendants previously (and unsuccessfully) challenged as incomplete.

Finally, neither the Graham Defendants nor the Alamance Defendants cite any case that supports denial of Plaintiffs' motion. In *Danis Env't Indus., Inc. v. Greenville Utilities Comm'n*, cited by County Defendants, ECF 57 at 6, the court *granted* leave to amend and permitted joinder because "[a]lthough addition of these claims may delay discovery to some extent … the potential for delay is not significant enough to constitute a sufficient

---

insufficiently pleaded, but FAC paragraph 156 is nearly identical as to Defendant Cole, and the FAC's allegations withstood Rule 12 scrutiny.

reason to deny joinder." 2006 WL 8438542, at *3 (E.D.N.C. Dec. 22, 2006). Similarly, in *Hinson v. Norwest Fin. South Carolina*, *see* Graham Def. Resp., ECF 58, at 7, the Fourth Circuit upheld the district court's decision to grant a motion to amend that joined additional plaintiffs who were involved in similar transactions even though "the factual circumstances of each transaction differed." 239 F.3d 611, 618 (4th Cir. 2001).

The two cases Defendants cite where the joinder motions were denied do not help them either. *See* Graham Def. Resp., ECF 58, at 7. *George v. Smith* involved a *pro se* inmate who attempted to use joinder as an end-run around the filing limits established under the Prison Litigation Reform Act. 507 F.3d 605, 607 (7th Cir. 2007). And in *Burgess v. Ebay, Inc.*, this court denied a *pro se* plaintiff's attempt to join numerous unrelated defendants in order to assert unrelated claims, observing that the *pro se* plaintiff "effectively has sought to commence numerous lawsuits for the price of one filing fee." 2013 WL 2898022, at *10 (M.D.N.C. June 13, 2013). Similar gamesmanship is not present here.

## II. The SAC Is Consistent With This Court's Orders

At least part of Defendants' opposition is that the SAC adds undue complexity to these proceedings by adding Doe Defendants by name. *See, e.g.*, Graham Def. Resp., ECF 58 at 9; Alamance Def. Resp., ECF 57 at 5. But Plaintiffs have always maintained that the Doe Defendants were involved in the wrongful acts described in their pleadings. That is why Plaintiffs named Doe Defendants in their FAC in the first place.

10

As explained above, the SAC represents Plaintiffs' effort to accurately and fully characterize what happened on October 31, 2020, consistent with Rule 8 and the guidance provided in the Court's May 21, 2021 Order. And the SAC was filed timely, on the day of the mutually-agreed upon deadline—so Defendants cannot claim prejudice on that basis. Indeed, the SAC is just one part of Plaintiffs' ongoing, good-faith efforts to move this case swiftly along while adding additional details as soon as Plaintiffs learn them.

In the time since Plaintiffs filed the FAC, this case has proceeded without undue delay. Defendants filed motions to dismiss and for judgment on the pleadings, which this Court denied. ECF No. 27. The parties proposed a November 2021 deadline to request leave to join additional parties and amend pleadings, which the Court approved. ECF Nos. 32, 33.

In the meantime, Plaintiffs have been diligent in discovery. On September 29, 2021, they submitted responses to Defendants' interrogatories and production requests. After conferring with Defendants, Plaintiffs supplemented their written responses with additional information as requested—and have agreed to further supplement their responses. Plaintiffs began producing documents on September 29, 2021, and have been producing documents on a rolling basis ever since. Plaintiffs have produced 814 documents thus far and are committed to fulfilling their discovery obligations in full.[4] Meanwhile, the Graham Defendants' first production, sent on October 1, 2021, lacked Bates stamps or load files.

---

[4] Plaintiffs made an additional document production on December 3, consisting of 149 documents.

11

The parties conferred and addressed this deficient production in mid-October. And on the Alamance Defendants' request, they were given an extension through the end of October to make their first document production. Combined, the Defendants have so-far produced approximately 2,500 documents. So while the parties have had discovery disagreements (as many civil litigants do), they have been working together in good faith to resolve any differences. There has been nothing extraordinary about the discovery process so far—certainly not to the point of justifying a denial of Plaintiffs' motion to amend the pleadings.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' motion for leave to amend, this Court should grant Plaintiffs' motion to file their SAC.

Respectfully submitted, this the 6th day of December 2021.

/s/ Elizabeth Haddix
Elizabeth Haddix
North Carolina Bar No. 25818
ehaddix@lawyerscommittee.org
/s/ Jennifer Nwachukwu
Jennifer Nwachukwu*
Maryland Bar No. 20869
jnwachukwu@lawyerscommittee.org
Lawyers' Committee for Civil Rights Under Law
1500 K Street N.W., Suite 900
Washington, D.C. 20005
Tel: 202-662-8300
*Notice of Special Appearance Filed*

/s/Jaclyn Maffetore
Jaclyn Maffetore
North Carolina Bar No. 50849
jmaffetore@acluofnc.org
Kristi L. Graunke
North Carolina Bar. No. 51216
kgraunke@acluofnc.org

Daniel K. Siegel
North Carolina Bar No. 46397
dsiegel@acluofnc.org
ACLU of North Carolina Foundation
P.O. Box 28004
Raleigh, NC 27611-8004
Tel: 919-834-3466

Jason Keith
North Carolina Bar No. 34038
Keith & Associates, PLLC
241 Summit Avenue
Greensboro, NC 27401
Tel: 919-914-6106

/s/ Geoffrey Pipoly
Geoffrey Pipoly
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 782-0600
gpipoly@mayerbrown.com

*Counsel for Plaintiffs*

## CERTIFICATE OF WORD COUNT

Relying on the word count function of Microsoft Word, I hereby certify that this brief complies with the word limitations set forth in L.R. 7.3(d)

>  */s/Elizabeth Haddix*
> Elizabeth Haddix
>
> *Counsel for Justice for the Next Generation Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on December 6, 2021, I electronically filed the foregoing **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will serve all counsel of record in this action.

> */s/Elizabeth Haddix*
> Elizabeth Haddix
>
> *Counsel for Justice for the Next Generation Plaintiffs*