# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JUSTICE FOR THE NEXT GENERATION, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **Civil Action No. 1:20-cv-00998** |
| TERRY JOHNSON, et al., | ) ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL GRAHAM DEFENDANTS' COMPLIANCE WITH RULE 34(b)(2)(B) AND TO PROVIDE COMPLETE WRITTEN DISCOVERY RESPONSES

# Table of Contents

I.   INTRODUCTION ............................................................................................... 1

II.  STATEMENT OF FACTS .................................................................................. 2

III. QUESTIONS PRESENTED ................................................................................ 4

IV.  LEGAL STANDARD ......................................................................................... 5

V.   ARGUMENT ..................................................................................................... 6

    A.    Defendants Should Complete Their Document Production by April 1 ................. 6

    B.    The Graham Defendants Should Be Compelled to Provide Full Interrogatory Answers ....................................................................................... 11

    C.    The Graham Defendants Should Be Compelled to Provide Complete Initial Disclosures ............................................................................................. 16

    D.    Plaintiffs Are Entitled to Rule 37(a) Relief ....................................................... 17

VI.  CONCLUSION ................................................................................................. 18

# Table of Authorities

Page(s)

**Cases**

*Am. Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*,
109 F.R.D. 263 (E.D.N.C. 1985) ................................................................... 15

*Ashghari-Kamrani v. U.S. Auto. Ass'n*,
2016 WL 11642670 (E.D. Va. 2016) ............................................................. 13

*C & T Mfg. Co. v. Hartford Fire Ins. Co.*,
2010 WL 3803419 (D.S.C. 2010) ........................................................... 13, 16

*Chalick v. Cooper Hosp./Univ. Med. Ctr.*,
192 F.R.D. 145 (D.N.J. 2000) ....................................................................... 17

*Deakin v. Magellan Health, Inc.*,
---F.R.D.---, 2022 WL 293145 (D.N.M. 2022) ............................................... 6

*Decision Insights, Inc. v. Sentia Grp., Inc.*,
311 F. App'x 586 (4th Cir. 2009) ................................................................. 18

*Doe v. Old Dominion Univ.*,
289 F. Supp. 3d 744 (E.D. Va. 2018) ............................................................. 5

*Evox Prods. v. Kayak Software Corp.*,
2016 WL 10586303 (C.D. Cal. 2016) ............................................................. 7

*Fischer v. Forrest*,
2017 WL 773694 (S.D.N.Y. 2017) ................................................................. 6

*Futreal v. Ringle*,
2019 WL 137587 (E.D.N.C. 2019) ................................................................. 6

*Hillyard Enters., Inc. v. Warren Oil Co.*,
2003 WL 25904133 (E.D.N.C. 2003) ........................................................... 15

*J.P. v. Barr*,
2020 WL 4643928 (C.D. Cal. 2020) ............................................................... 6

*Jenkins v. Capital Mgmt. Servs., LP*,
2011 WL 4501409 (W.D.N.C. 2011) ........................................................... 18

*Kinetic Concepts, Inc. v. ConvaTec Inc.*,
   268 F.R.D. 226 (M.D.N.C. 2010) ................................................................. 6

*Martin v. Montgomery*,
   2020 WL 6365352 (D.S.C. 2020) ................................................................. 13

*Mezu v. Morgan State Univ.*,
   269 F.R.D. 565 (D. Md. 2010) ..................................................................... 13

*Minter v. Wells Fargo Bank, N.A.*,
   286 F.R.D. 273 (D. Md. 2012) ..................................................................... 16

*Paulino v. Dollar Gen. Corp.*,
   2013 WL 1773892 (N.D. W.Va. 2013) ......................................................... 12

*Proa v. NRT Mid. Atl., Inc.*,
   633 F. Supp. 2d 209 (D. Md. 2009), *aff'd* 398 F. App'x 882 (4th Cir.
   2010) ............................................................................................................. 18

*Randolph v. PowerComm Const., Inc.*,
   309 F.R.D. 349 (D. Md. 2015) ..................................................................... 17

*Singletary v. Sterling Transp. Co.*,
   289 F.R.D. 237 (E.D. Va. 2012) ................................................................... 6

*Smith v. Bayer Material Sci., LLC*,
   2013 WL 3153467 (N.D. W.Va. 2013) ......................................................... 13

*Thurby v. Encore Receivable Mgmt., Inc.*,
   251 F.R.D. 620 (D. Colo. 2008) ................................................................... 16

*Walls v. Ford Motor Co.*,
   2021 WL 1723154 (M.D.N.C. 2021) ............................................................ 12

**Other Authorities**

Fed. R. Civ. P. 26 ............................................................................................ *passim*

Fed. R. Civ. P. 26(f) ............................................................................................. 1, 3, 9

Fed. R. Civ. P. 33 ................................................................................................ 12, 15

Fed. R. Civ. P. 34 ........................................................................................... 4, 6, 7, 10

Fed. R. Civ. P. 37 ...................................................................................... 5, 13, 16, 17, 18

iii

# I.    INTRODUCTION

This case is on the cusp of substantial deposition discovery. Plaintiffs have proposed dates and times for taking over 30 depositions in the context of Fed. R. Civ. P. 26(f) discussions with the newly-added Defendants. *See* Ex. 1.[1] However, even 5 months (and 155 days) after serving their responses and objections to Plaintiffs requests for production, the Graham Defendants[2] have not completed their document productions or provided Plaintiffs with a date by which they will do so. Instead, Plaintiffs' review of the Graham Defendants' document production has found gaping holes, including missing text message and social media data, and missing documents from personal email accounts that were used for business purposes. *See* Ex. 2. Plaintiffs will be prejudiced if they do not have access to the complete document productions when preparing for depositions, which are fast approaching. Accordingly, Plaintiffs respectfully request that this Court compel the Graham Defendants to complete their document production by April 1, 2022.

To make matters worse, the Graham Defendants' interrogatory answers are materially incomplete. They rely on boilerplate objections that obscure whether they have withheld relevant information from their interrogatory answers. The interrogatory answers are also not responsive to the questions posed. Importantly, the Graham Defendants' insufficient document productions contradict their own interrogatory answers. Despite all

---

[1] As used in this motion, "Ex." refers to the exhibits to the contemporaneously filed declaration of Michael Bornhorst.

[2] As used in this motion, "Graham Defendants" means Defendants City of Graham, Cole, Velez, and Franks.

this, apart from updating one interrogatory answer not at issue in this motion, the Graham Defendants have refused to amend their interrogatory answers. They should be compelled to do so.

Finally, the Graham Defendants have not provided defendant-specific initial disclosures. This tactic obscures basic information about the persons who will support each defendant's claims and defenses. Without this information, Plaintiffs cannot make fully informed decisions about who to depose and who to serve with document subpoenas. The Graham Defendants should be compelled to provide that information.

## II.    Statement of Facts

On October 31, 2020, Plaintiffs participated in the "I Am Change" March to the Polls (the "March"). Sec. Am. Compl. ¶ 1. The March stared at the Wayman Chapel African Methodist Episcopal Church in Graham, North Carolina, and was supposed to end at the early voting location at the Historic Alamance County Courthouse in Graham. *Id.* ¶¶ 1, 113-119. However, after participants in the March paused and observed a moment of silence near the Courthouse, the March was interrupted when Defendant King deployed MK-9 OC vapor (commonly known as "pepper spray"), followed by Defendants Sakin and Neudecker. *Id.* ¶ 131. As this occurred, Defendant Neudecker turned to Defendant King and said, "Hit 'em again! Hit 'em again!" *Id.* ¶ 132. After receiving this encouragement, Defendant King sprayed two more times. *Id.* ¶ 133.

The March proceeded for another hour after this first round of pepper spray. Sec. Am. Compl. ¶ 162. However, Defendants Boggs, J. Hopkins, T. Hopkins, Hopkins, King,

Land, Jordan, McClelland, McVey, Parks, Tomey, and Way pepper sprayed participants in the March twice more, injuring Plaintiffs and preventing them from accessing the polling place. *Id.* ¶¶ 169, 195-198. At one point during these rounds of pepper spray, Defendant Land told Defendant Jordan, "I'm spraying. You ready?" *Id.* ¶ 195. Defendant Jordan replied, "Oh I'm ready." *Id.* ¶ 195. Then Defendant Land said, "I'm getting ready to hose them." *Id.* ¶ 195.

After these rounds of pepper spray were over, some of the Defendants gloated about what they had done. Defendant Land approached Defendant King and said, "I knew you'd spray first. I love it! I love it!" Sec. Am. Compl. ¶ 203. Defendant Land then gave Defendant King a fist bump as Defendant King laughed. *Id.*

Plaintiffs filed this action on November 2, 2020. Dkt. 1. On June 2, 2021, Judge Eagles largely denied the Graham Defendants' motion to dismiss and the Alamance Defendants' motion for judgment on the pleadings. *See* Dkt. 27 at 24.

The parties exchanged initial disclosures on August 16, 2021. *See* Dkt. 35. On August 25, 2021, this Court adopted Plaintiffs' Rule 26(f) Report, but limited each side to serving "up to 10 common interrogatories, requests for admission, and requests for production." Aug. 25, 2021 Text Order. Six days later, Plaintiffs served their common sets of interrogatories and requests for production. *See, e.g.*, Ex. 3; Ex. 4. The Graham Defendants responded to those discovery requests on September 30, 2021. *See, e.g.*, Ex. 5.

To date, the Graham Defendants have made four document productions to date: . October 11, 2021 (1,987 documents); November 11, 2021 (308 documents); February 11,

2022 (848 documents), and February 25, 2022 (38 documents). *See* Bornhorst Decl. ¶ 3. In total, the Graham Defendants have produced 3,181 documents. *Id.* ¶ 3. The Graham Defendants have admitted that their document production is not complete and that they are still collecting responsive materials. *Id.* ¶ 8.

Plaintiffs have raised several issues with the completeness of the Graham Defendants' discovery responses, and worked in good faith to resolve those disputes. The parties held a two-hour telephone conference to discuss issues with the Graham Defendants' discovery responses (among other issues) on October 19, 2021. Bornhorst Decl. ¶ 5. Plaintiffs raised concerns about Defendants' document production and interrogatory responses in a follow-up letter. *See* Ex. 6. During these discussions, the Graham Defendants encouraged Plaintiffs to assess the adequacy of their discovery responses in light of their ongoing document production. Bornhorst Decl. ¶ 6.

On February 21, 2022, Plaintiffs again raised concerns about the completeness of the Graham Defendants' document production and interrogatory answers. *See* Ex. 2. Plaintiffs and the Graham Defendants met and conferred on February 25, 2022 to resolve these issues. Bornhorst Decl. ¶ 7. While the Graham Defendants produced 38 documents shortly after that telephone conference and committed to (potentially) updating one interrogatory answer, the discovery disputes at issue in this motion have not been resolved. *Id.* ¶¶ 8-9.

## III. Questions Presented

This motion presents the following questions:

- Should the Graham Defendants be compelled to complete their production of documents before the beginning of deposition discovery pursuant to Fed. R. Civ. P. 34(b)(2)(B)?

- Should the Graham Defendants be compelled to provide complete and non-evasive answers to Plaintiffs' interrogatories?

- Should the Graham Defendants be required to provide individual initial disclosures as required by Fed. R. Civ. P. 26(a)?

- Should this Court award to Plaintiffs reasonable costs and expenses incurred in making this motion pursuant to Fed. R. Civ. P. 37(a)(5)?

## IV.    Legal Standard

A party is entitled to discovery that is relevant to its claims and defenses, is not privileged, and is proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). "The Federal Rules contemplate the broadest possible discovery possible in the search for the truth." *Doe v. Old Dominion Univ.*, 289 F. Supp. 3d 744, 749 (E.D. Va. 2018) (internal quotation marks omitted). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). On a motion to compel, "the burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted." *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012); *see also Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243 (M.D.N.C. 2010) (Fourth Circuit courts "have repeatedly ruled that the party . . . resisting discovery . . . bears the burden of persuasion.").

## V. Argument

### A. Defendants Should Complete Their Document Production by April 1

Federal Rule of Civil Procedure 34(b)(2)(B) states, "The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response." The 2015 Advisory Committee notes explain that "[w]hen it is necessary to make the production in stages the response should specify the beginning and end dates of the production." *See* Fed. R. Civ. P. 34(b)(2)(B), 2015 adv. comm. note. Therefore, parties "must amend their responses to set out a reasonable production schedule with beginning and end dates." *J.P. v. Barr*, 2020 WL 4643928, at *1 (C.D. Cal. 2020); *see also Deakin v. Magellan Health, Inc.*, ---F.R.D.---, 2022 WL 293145, at *4 (D.N.M. 2022) ("Rule 34 plainly requires Defendants to specify the end date by which they will complete their production of documents and ESI responsive to Plaintiffs' first set of requests for production. . . . Moreover, the end date must be within a reasonable period of time.") (internal footnote and citation omitted); *Futreal v. Ringle*, 2019 WL 137587, at *6 (E.D.N.C. 2019) (citing 2015 Advisory Committee Note and recognizing that "the rules envision circumstances where parties make a production on an ongoing basis"); *Fischer v. Forrest*, 2017 WL 773694, at *3 (S.D.N.Y. 2017) ("[R]esponses [that] do not indicate when documents and ESI that defendants are producing will be produced" violate Rule 34); *Evox Prods. v. Kayak Software Corp.*, 2016 WL 10586303, at *4 (C.D. Cal. 2016) (responses that do "not specify the date for completion of [] production" violate Rule 34).

6

Instead of complying with Rule 34(b)(2)(B), the Graham Defendants represented that "[t]he City of Graham will produce responsive, non-privileged documents in its possession, custody or control that it can locate." *See, e.g.*, Ex. 5 at 12, 14-15. The Graham Defendants have since conceded that their document production is incomplete. Bornhorst Decl. at ¶ 8.

But the Graham Defendants' document production is still incomplete in several respects. ***First***, Defendants have not produced documents reflecting internal investigative or corrective action taken by the Graham Police Department ("GPD") with respect to officers involved in the events underlying Plaintiffs' claims. Defendants Cole and Sisk suggested in public interviews that they took action "internally as a personnel matter" with respect to the officers that "[made] mistakes or [fell] short of expectations" at the October 31, 2020, I Am Change March to the Polls. *See* Jordan Wilkie, *Graham police chief admits officers' unprofessionalism; city denies wrongdoing*, Carolina Public Press (July 15, 2021) https://carolinapublicpress.org/47152/graham-police-chief-admits-officers-unprofessionalism-city-denies-wrongdoing/ (attached as Ex. 8). To date, the only documents that the Graham Defendants have produced regarding any reprimand or discipline in connection with the October 31, 2020 March to the Polls is a single recommendation that an officer be reprimanded for not turning on his body-worn camera. *See* Ex. 9. The Graham Defendants should be compelled to produce all documents regarding the GPD officer's acknowledged "unprofessionalism" and "mistakes" during the

7

March to the Polls, including internal personnel actions and investigations, and if no such documents exist they should say so.

**Second**, the Graham Defendants produced an "After Action Report" concerning the October 31, 2020 March to the Polls that lists "[t]he use of OC vapor" as a "positive," Ex. 11 at 224, and state that there "was no use of force which resulted in any physical injuries to participants" in the March, *id.*, but notes that "[a]ll officers need more training in Crowd Control Techniques and Dispersal," *id.* at 226. The Graham Defendants, however, have not produced any documents indicating that the GPD provided the training discussed in the After Action Report. They should produce any such documents, and if none exist, they should say so.

**Third**, the Graham Defendants have not produced any cell phone text messages or other personal-device communications responsive to Plaintiffs' Requests for Production 1, 3, 4, or 7. The Graham Defendants claim that the individuals have "no documents in [their] individual capacity responsive to [these] request[s]." Ex. 5 at 13-16. But this assertion is belied by several communications produced by Plaintiffs. *See, e.g.*, Ex. 12, Ex. 13. For instance, Plaintiffs seek "documents related to…the March to the Polls," such as communications about the March. Ex. 4 at Req. 7. Plaintiffs have produced Facebook Messenger data in which Defendant Cole discusses the March and the Graham Police Department's response to it. *See, e.g.*, Ex. 12. But the Graham Defendants have not produced any data from Facebook Messenger nor provided a date certain for its production. *See* Bornhorst Decl. ¶ 8. Similarly, members of the Graham Police Department Office sent

8

documents concerning the March to the Polls to their personal email. *See* Ex. 14. However, the Graham Defendants have not produced any documents from any personal email account. *See* Bornhorst Decl. ¶ 9.

**Finally**, the Graham Defendants have not provided sender-recipient metadata for some documents. The Plaintiffs' Rule 26(f) Report, adopted by the Court, contains an ESI agreement providing that "each of the metadata and coding fields identified in the Chart labeled 'Production Metadata Fields'. . . that can be extracted from a document shall be produced for that document as part of the load file." Pls.' Rule 26(f) Report Add. A, ESI Case Protocol (1)(e)(iv), Dkt. 32. This "Production Metadata Fields" Chart includes "From," "To," "CC," and "BCC" as agreed-upon information to be provided along with produced documents. *Id.* The Graham Defendants have not complied with this agreement and Court Order as they have produced documents that lack these metadata fields. For example, GPD0013020 is a September 2021 email with the subject line "FW: Draft 2020 Drumwright" that does not appear to contain any information about the recipient(s) of the email. *See* Ex. 15. This deficiency also violates Rule 34's requirement that ESI be produced in a "reasonably usable form," Fed. R. Civ. P. 34(b)(2)(E)(ii), because "[a]side from potentially bearing upon the merits of the case, metadata also may play a functional role in the usability of ESI," *The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Production,* 19 Sedona Conf. J. 1, 170 (3d ed. 2018). Without this information the document is not usable for determining who was aware of the facts the document contains. Further, this sender-recipient information is not

only missing from the metadata but is also missing from the face of the document. This information may be missing because it appears that the email was originally deleted, as the source of the document is "(Primary)/Recoverable Items/Deletions." Bornhorst Decl. ¶ 25. Other documents indicate that their metadata was altered by being moved to a "DiscoveryHold" folder rather than where they were kept in the regular course of business. *See, e.g.*, *id.* ¶ 14 (discussing GPD0013031, GPD0013034, GPD0013044).

Plaintiffs raised these issues with the Graham Defendants by letter on February 21, 2022. *See* Ex. 2. The parties met and conferred by telephone to discuss these deficiencies on February 25, 2022. *See* Bornhorst Decl. ¶ 7. Despite previously representing to Plaintiffs' counsel and the Court that their document production was complete, during the meet and confer the Graham Defendants promised to remedy these issues via a document production. *Id.* ¶ 8. On February 25, 2022, the Graham Defendants produced 38 documents without any indication of whether (a) further document productions will be forthcoming, or (b) their document production is now complete. *Id.* ¶ 9.

At any rate, Graham Defendants concede that their document production is not complete. Bornhorst Decl. ¶ 8. Plaintiffs will be prejudiced if they are forced to begin taking depositions without complete document productions. Because Plaintiffs are actively attempting to schedule depositions of Defendants, the Graham Defendants should be compelled to complete their document productions by April 1, 2022.

## B. The Graham Defendants Should Be Compelled to Provide Full Interrogatory Answers

Similarly, The Graham Defendants' interrogatory answers are incomplete. They are a maze of boilerplate objections, half answers, and statements contradicted by the discovery record. This is improper. Plaintiffs need complete and meaningful answers to their interrogatories so that they can utilize them in depositions.

*Improper boilerplate objections.* The Graham Defendants' interrogatory answers begin with seven "general objections" that they "incorporate . . . into each and every response." *See* Ex. 5 at Gen. Obj. 8. In these general objections, the Graham Defendants object "to the extent that" certain conditions exist. *Id.* at Gen. Objs. 1-7. For instance, the Graham Defendants object that Plaintiff propounded "definitions and instructions that exceed the requirements set forth in Fed. R. Civ. P. 26, *et seq.*" *Id.* at Gen. Obj. 1. It is not clear what this objection means. Rule 26 lays out a broad scope of discovery and addresses certain overarching issues such as proportionality and undue burden, but does not address instructions and definitions specifically. *See* Fed. R. Civ. P. 26(b)(1). It is also unclear what is being meant by the use of the Latin "*et seq.*" It seems to imply that Plaintiffs should scour Rule 26 and the 59 rules of civil procedure that follow it to determine if their instructions and definitions are improper.

The Graham Defendants propound other boilerplate objections, accusing Plaintiffs of "vary[ing] . . . the ordinary meaning of English words," Ex. 5 at Gen. Obj. 2, seeking information protected by the attorney-client privilege or attorney-work product, *id.* at Gen. Obj. 3, seeking information that is "confidential or otherwise protected information," *id.* at

11

Gen. Obj. 4, seeking discovery that is "not relevant to the subject matter involved in the pending action and not proportional to the needs of the case," *id.* Gen. Obj. 5, propounding "[d]iscovery [r]equests" that are, allegedly, "vague, ambiguous, complex, confusing, or unduly burdensome," *id.* at Gen. Obj. 7, and "requir[ing] the[] Graham Defendants to provide or search for any information that is not within its possession and/or already possessed by Plaintiffs, Plaintiffs' counsel, or persons/entities who are not parties to this litigation," *id.* at Gen. Obj. 7.

These general objections are improper. Federal Rule of Civil Procedure 33(b)(4) is clear: "The grounds for objecting to an interrogatory *must be stated with specificity*." Fed. R. Civ. P. 33(b)(4) (emphasis added). For more than a decade, district courts across the country, including in the Fourth Circuit, have explained that relying on general objections is improper. *See, e.g.*, *Paulino v. Dollar Gen. Corp.*, 2013 WL 1773892, at *12 (N.D. W.Va. 2013) (collecting cases and noting that boilerplate general objections "are highly disfavored in the Fourth Circuit."); *Walls v. Ford Motor Co.*, 2021 WL 1723154, at *11 (M.D.N.C. 2021) (Auld, M.J.) (disapproving of use of general objections and ordering defendant to "supplement its discovery responses to the extent [it] previously withheld responsive information solely on the basis of its general objections").[3] However, it is

---

[3] *See also Martin v. Montgomery*, 2020 WL 6365352, at *3 (D.S.C. 2020) ("defendants' general, non-specific objections to the plaintiffs' interrogatories . . . are deemed waived."); *Ashghari-Kamrani v. U.S. Auto. Ass'n*, 2016 WL 11642670, at *2 (E.D. Va. 2016) (rejecting general objection that interrogatories were "vague, ambiguous, overly broad, and unduly burdensome" as an improper boiler plate objection); *Smith v. Bayer Material Sci., LLC*, 2013 WL 3153467, at *1 (N.D. W.Va. 2013) ("Any objection to discovery requests

12

unclear whether they are withholding information based on those general objections. By April 1, 2022, the Graham Defendants should serve supplemental interrogatory answers clarifying whether they have withheld any information based on these general objections.

*Incomplete interrogatory answers.* In addition, the Graham Defendants' interrogatory answers are incomplete. "The answers to interrogatories must be responsive, full, complete and unevasive." *C & T Mfg. Co. v. Hartford Fire Ins. Co.*, 2010 WL 3803419, at *1 (D.S.C. 2010) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."); *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 573 (D. Md. 2010) (same). Here, several of the Graham Defendants' interrogatory answers are incomplete and must be supplemented.

*Interrogatory 2* asks the Graham Defendants to "[i]dentify all persons involved and/or consulted in the creation of the Public Safety Plan, described in paragraphs 79-80 of the First Amended Complaint." Ex. 3 at Interrog. 2. Rather than answering this interrogatory, the Graham Defendants provided an answer regarding the "primary individuals" that were "involved with and/or consulted regarding" "GPD's plans for the 10/31 event." *See id*. Plaintiffs have requested that the Graham Defendants provide an answer that identifies the specific persons that were involved in, or consulted on, the

---

must be lodged with some specificity so the requesting party, and the Court if it becomes involved, can ascertain the basis for the objection.").

creation of the Public Safety Plan. The Graham Defendants have refused. They should be compelled to provide that answer.

**Interrogatory 3** asks the Graham Defendants to "[i]dentify all ACSO and GPD personnel who were a part of the 'unified command' between Defendants and/or other law enforcement agencies during the March to the Polls, including their specific job assignments or duties and any and all policies, rules, ordinances, laws or procedures they were charged with enforcing." Ex. 3 at Interrog. 3. The Graham Defendants respond that the use of the term "unified command" "is somewhat of a misnomer" and insist that certain personnel were merely "co-locat[ed]" at an undisclosed location. *See id.* at Interrog. 3.

This answer is insufficient and incorrect. The "Fire/Medical OPS Plan" for the March to the Polls establishes that there was a "unified command." Ex. 16 at 149, 150, 151. Documents produced by the ACSO also refer to the existence of "the unified command." Ex. 17 at pg. 41; Ex. 18 at pgs. 2 & 4. The GPD's own Operation Plan for the March to the Polls contradicts any assertion of "misnomer:" "Command Type: Unified Command." Ex. 19 at 649; *see also* Ex. 20 at 720; Ex. 21 at 933. The GPD's public statements to the media following the March to the Polls also confirm the existence of a "unified command." Ex. 22. Because the Graham Plaintiffs' answer cannot be squared with their own document, they should be compelled to amend and supplement their answer.

**Interrogatory 6** asks the Graham Defendants to "[i]dentify all persons responsible for training GPD and ACSO personnel in use of force tactics, crowd control tactics, de-escalation techniques, and First and Fourth Amendment rights between April 1, 2020 and

October 31, 2020, including the dates of training along with the identity of the trainer." Interrog. 6. In response, the Graham Defendants state that "[t]raining record documents will be produced from which responses to this interrogatory can be derived." *Id.* This answer is insufficient. Rule 33(d) requires the answering party to provide "sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d). In other words, the answering party must "specify, by category and location, the records from which answers to interrogatories can be derived." *Am. Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*, 109 F.R.D. 263, 266 (E.D.N.C. 1985) (internal quotation marks omitted). Therefore, "[d]irecting the opposing party to an undifferentiated mass of records is not a suitable response to a legitimate [interrogatory]." *Id.*; *see also Hillyard Enters., Inc. v. Warren Oil Co.*, 2003 WL 25904133, at *2 (E.D.N.C. 2003) (describing one of the "prerequisite[s]" to the use of Rule 33(d) as "specify[ing] for each interrogatory the actual documents where information will be found."). As another district court in the Fourth Circuit put it, "a party must therefore identify the particular document or documents within a production that will answer the interrogatory." *Minter v. Wells Fargo Bank, N.A.*, 286 F.R.D. 273, 278 (D. Md. 2012). The Graham Defendants should be compelled to do the same here.

**Interrogatory 7** asks the Graham Defendants to "[d]escribe in detail any and all property that was damaged or vandalized in the course of the March to the Polls." Ex. 3 at Interrog. 7. In response, the Graham Defendants refer to an alleged assault on an ASCO deputy, participants in the March to the Polls blocking traffic, and an alleged battery to a

GPD officer. *See id.* But that answer is not responsive to the interrogatory, which was limited to property damage and vandalism that occurred during the March to the Polls. *See id.* "The answers to interrogatories must be responsive, full, complete and unevasive." *C & T Mfg. Co.*, 2010 WL 3803419, at *1 (internal quotation marks omitted); *see also* Fed. R. Civ. P. 37(a)(4). Here, rather than providing an answer regarding damage or vandalism to property, the Graham Defendants have provided a non-responsive and evasive answer.

## C. The Graham Defendants Should Be Compelled to Provide Complete Initial Disclosures

Federal Rule of Civil Procedure 26(a) "seeks 'to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information.'" *Thurby v. Encore Receivable Mgmt., Inc.*, 251 F.R.D. 620, 621 (D. Colo. 2008) (quoting Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment). These disclosures are meant to "streamline discovery and thereby avoid the practice of serving multiple, boilerplate interrogatories and document requests, which themselves bring into play a concomitant set of delays and costs." *Chalick v. Cooper Hosp./Univ. Med. Ctr.*, 192 F.R.D. 145, 150 (D.N.J. 2000).

Here, rather than providing initial disclosures on a defendant-by-defendant basis, the Graham Defendants provided a consolidated initial disclosure that provides a list of the individuals with knowledge that *any* of the Graham Defendants may rely upon for *any* of their defenses. This is improper. Federal Rule 26(a) makes clear that "a party" must provide certain information to "the other parties" "without awaiting a discovery request." Fed. R.

16

Civ. P. 26(a)(1); *see also Randolph v. PowerComm Const., Inc.*, 309 F.R.D. 349, 362 (D. Md. 2015) (noting that Rule 26(a) requires disclosures from "each party").

This also prejudices Plaintiffs. Plaintiffs have sued the Graham Defendants separately. They are entitled to know, on a defendant-by-defendant basis, the names of the persons that are likely to have information about each defendants' claims and defenses. Plaintiffs need this information so that they can make informed decisions about who to depose and who to serve with document subpoenas. The Graham Defendants should be compelled to provide complete and separate initial disclosures.

### D.     Plaintiffs Are Entitled to Rule 37(a) Relief

Rule 37(a)(5)(A) allows for the reimbursement of reasonable expenses, including attorneys' fees, incurred by the movant in making a motion to compel. "[A]fter giving an opportunity to be heard," the district court must award require the non-moving party, or its counsel, to pay "reasonable expenses incurred in making the motion, including attorney's fees," unless the movant filed the motion before making good faith attempts to obtain the discovery at issue, the non-moving party's position "was substantially justified," or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A).

None of those exceptions apply here. Plaintiffs made a good faith effort to obtain timely document productions and complete interrogatory responses . *See* Ex. 2; Bornhorst Decl. ¶¶ 7-9. There is no excuse for failing to comply with black letter discovery law and to provide responsive interrogatory answers and a deadline for completing their document productions. *See, e.g.*, *Proa v. NRT Mid. Atl., Inc.*, 633 F. Supp. 2d 209, 213 (D. Md. 2009)

17

(the non-moving party bears the burden of proving that its position was substantially justified), *aff'd* 398 F. App'x 882 (4th Cir. 2010); *Decision Insights, Inc. v. Sentia Grp., Inc.*, 311 F. App'x 586, 599 (4th Cir. 2009) (a legal position is "substantially justified" if there is a "genuine dispute" as to the proper resolution or if "a reasonable person could think . . . it has a reasonable basis in law and fact.") (internal quotation marks omitted). Nor is there some extenuating circumstance that would weigh against awarding reasonable fees and expenses. *See, e.g.*, *Jenkins v. Capital Mgmt. Servs., LP*, 2011 WL 4501409, at *1 (W.D.N.C. 2011) (rejecting argument that delayed discovery responses were justified because a party was "a large, sophisticated, and busy . . . entity"). For that reason, this Court should award reasonable fees and expenses incurred in connection with the present motion.

## VI.     Conclusion

For the foregoing reasons, Plaintiffs' motion to compel should be granted in full.

Respectfully submitted, this the 4th day of March, 2022.

Counsel for Plaintiffs:

/s/ Elizabeth Haddix
Elizabeth Haddix
North Carolina Bar No. 25818
ehaddix@lawyerscommittee.org
LAWYERS COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
P.O. Box 956
Carrboro, NC 27510
Tel. 919-914-6106

Jennifer Nwachukwu*
Maryland Bar No. 20869
jnwachukwu@lawyerscommittee.org
Lawyers' Committee for Civil Rights
Under Law
1500 K Street NW, Suite 900
Washington, D.C. 20005
Tel. 202-662-8300

Jason L. Keith
North Carolina Bar No:34038
Keith & Associates, PLLC
241 Summit Avenue,
Greensboro, NC 27401

/s/Jaclyn Maffetore
Kristi L. Graunke
North Carolina Bar No. 51216
kgraunke@acluofnc.org
Jaclyn Maffetore
North Carolina Bar No. 50849
jmaffetore@acluofnc.org
Daniel K. Siegel
North Carolina Bar No. 46397
dsiegel@acluofnc.org
ACLU of North Carolina
P. O. Box 28004
Raleigh, NC  27611-8004
Tel: 919-834-3466

Michael Bornhorst*
Geoffrey Pipoly*
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL 60606
(312) 782-0600
mbornhorst@mayerbrown.com
gpipoly@mayerbrown.com

*By Special Appearance*

19

## **L.R. 7.3(d) Certification**

I certify that the foregoing brief contains 5,520 words.


$\quad\quad\quad\quad\quad\quad\quad\quad$ _/s/ Michael Bornhorst_
$\quad\quad\quad\quad\quad\quad\quad\quad$ Michael Bornhorst
$\quad\quad\quad\quad\quad\quad\quad\quad$ _Counsel to Plaintiffs_

## L.R. 37.1(a) Certification

I certify that after personal consultation and diligent attempt to resolve differences the parties are unable to reach an accord with respect to the foregoing discovery disputes. Specifically, on February 25, 2022, counsel for plaintiffs (Michael Bornhorst, Elizabeth Haddix, Jaclyn Maffetore) met via video conference with counsel for the Graham Defendants (Anthony J. Biller, and Adam Banks). During the conference, the Graham Defendants agreed to produce a limited number of additional documents and to update interrogatory answers identifying the persons that deployed pepper spray during the October 31, 2020 March to the Polls, but the parties were unable to resolve the disputes presented in the foregoing motion.

*/s/ Michael Bornhorst*
Michael Bornhorst
*Counsel to Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 4, 2022 I caused the foregoing document to be filed using the Court's CM/ECF which will electronically notify all counsel of record:

Anthony J. Biller
Adam P. Banks
ENVISAGE LAW
2601 Oberlin Rd., Suite 100
Raleigh, NC 27608
ajbiller@envisage.law
apbanks@envisage.law

Christian Ferlan
Scott D. Maclatchie
HALL BOOTH SMITH, P.C.
11215 North Community House Road
Suite 750
Charlotte, NC 28277
cferlan@hallboothsmith.com
smaclatchie@hallboothsmith.com

*Attorneys for City of Graham, Mary Kristine Cole,
Joaquin Velez, and Jonathan Franks*

William H. Hill
FRAZIER, HILL & FURY, RLLP
2307 W. Cone Blvd., Suite 260
Post Office Drawer 1559
Greensboro, NC 27401
whill@frazierlawnc.com

Paul G. Gessner
CRANFILL SUMNER LLP
PO Box 27808
Raleigh, NC 27611
pgessner@cshlaw.com

*Attorneys for Defendants Terry Johnson, Cliff Parker*

/s/ Michael Bornhorst
Michael Bornhorst
*Counsel to Plaintiffs*

1

2