# EXHIBIT 2

 

February 21, 2022


Anthony Biller, ajbiller@envisage.law
Christian Ferlan, CFerlan@hallboothsmith.com
Scott MacLatchie, SMacLatchie@hallboothsmith.com
Paul Gessner, pgessner@cshlaw.com
William Hill, whill@frazierlawnc.com

   Re: *J4tNG, et al. v. Cole, et al., No. 1:20-cv-00998 (M.D.N.C)*


Dear Counsel:

  We write to raise concerns about several deficiencies in Defendants' production of documents in response to Plaintiffs' August 31, 2021, Request for Production of Documents. While Plaintiffs' review of Defendants' production is ongoing, we have noted several deficiencies that indicate that Defendants' productions do not meet Defendants' discovery obligations and do not comply with the applicable rules and the Court's orders. We would like to meet and confer about these deficiencies on or before February 25, 2022 to resolve these concerns and avoid having to burden the Court with a motion to compel. Please let us know when you are available to meet and confer.

## I. Graham Defendants

### A. Deficiencies in Document Productions

  The Graham Defendants' production is improperly proceeding on a rolling basis, lacks metadata the parties agreed to produce, and is missing several categories of responsive documents.

  **Missing Documents:** The Graham Defendants have not produced (1) families for some documents, (2) documents related to actions taken internally as a result of the March, or (3) individual defendants' communications on personal devices. Some of these deficiencies may be the result of Defendants' under-inclusive document search criteria, which Plaintiffs first raised concerns about during an October 19, 2021, meet and confer. *See* October 23, 2021, Meet and Confer Follow Up Letter at 2. Plaintiffs relied on Defendants' representation that their narrow searches captured all of the relevant documents and communications, but Plaintiffs maintained their objection to the sufficiency of this response subject to a further review of Defendants' document production to confirm whether the searches were indeed under-inclusive. *Id.* After further review, it is apparent that Defendants have not produced all responsive documents.

1

First, the Graham Defendants have not produced documents reflecting internal investigative or corrective action taken by the Graham Police Department ("GPD") with respect to officers involved in the events giving rise to Plaintiffs' claims. Defendants Cole and Sisk suggested in public interviews that they took action "internally as a personnel matter" with respect to the officers that "[made] mistakes or [fell] short of expectations" at the October 31, 2020, I Am Change March to the Polls. *See* Jordan Wilkie, *Graham police chief admits officers' unprofessionalism; city denies wrongdoing*, Carolina Public Press (July 15, 2021) https://carolinapublicpress.org/47152/graham-police-chief-admits-officers-unprofessionalism-city-denies-wrongdoing/. A reasonable search of the Graham Defendants' production does not yield documents indicating that an investigation took place. Rather, this search only yielded documents authored by GPD officers recommending no internal investigation be undertaken, and at most a written reprimand for one officer. *See* GPD0003086 (report by Officer Velez "recommending a documented (written) verbal reprimand" for Defendant Boggs for not having body camera footage from the March). Accordingly, Plaintiffs request that the Graham Defendants identify in the production or produce documents indicating investigative or corrective actions taken by the GPD as a result of the March to the Polls.

Second, the GPD's own emails indicate that it owns a security camera mounted on a pole near The Verdict restaurant on the Historic Courthouse Square in Graham, North Carolina and that GPD officers reviewed "multiple hours of footage" from that camera at the direction of its attorneys. GPD0000141. However, Defendants have not produced those hours of security camera video. Please produce the video from that security camera on October 31, 2020 and any documents related to Defendants' review of that video from October 31, 2020 by February 25, 2022.

Third, the After Action Report for the October 31, 2020 March to the Polls lists "[t]he use of OC vapor" as a "positive," GPD0010214 at 224, and that there "was no use of force which resulted in any physical injuries to participants" in the March, *id.*, but notes that "[a]ll officers need more training in Crowd Control Techniques and Dispersal," *id.* at 226. We have seen no documents indicating that the GPD provided the training discussed in the After Action Report. If those documents exist, they should be produced. Please confirm that you will produce these documents (if they exist) by February 25, 2022.

Fourth, the Graham Defendants have not produced any cell phone text messages or other personal-device communications responsive to Plaintiffs' Requests for Production 1, 3, 4, or 7. Defendants' assertions that the individuals have "no documents in [their] individual capacity responsive to [these] request[s]," *see* Defs. Resps. 13-16,[1] are belied by several communications produced by Plaintiffs. *See* Plaintiffs_0003217-21, Plaintiffs_0003480. For example, Request 3 seeks "documents related to the March to the Polls," such as "communications," Pls.' Reqs. 7, and Plaintiffs_0003220 is a Facebook Messenger conversation the day after the March to the Polls in which Graham Police Chief Kristy Cole discusses the March: "We sprayed ground yes . . . we do always have to take responsibility for agency actions . . . ." Another example is GPD0013092, in which Officer Christopher Dunnagan sent documents relevant to the claims and defenses in the litigation to his personal email address, cddunnagan@yahoo.com. In a further example, automated

---

[1] It is unclear what this objection means. Regardless of whether these are documents created in a Defendant's "individual capacity" they are certainly within the possession, custody, and control of that Defendant.

emails from the Graham Police Department's case management system were sent to the personal email of then-Lieutenant Tony Velez. *See* GPD0013071.[2] However, no documents were produced from Captain Velez's personal email address. It appears that GPD officers, including individuals named as Defendants in this litigation, communicated substantially by personal device. Please confirm that the Graham Defendants will search all individual defendants' personal devices and accounts (including text messages and social media private messages), and produce all responsive communications contained on these personal devices and accounts by February 25, 2022.

Fifth, the Graham Defendants have not produced attachments to emails that indicate that they contain attachments. For example, GPD0000015 is an email with the subject line "2020 Parade Protest Event Report" that contains an attachment by the same name, but the Graham Defendants have not provided this attachment along with this email. *See* GPD0000016 (similar). The missing attachment appears, based on its title, responsive to Plaintiffs' Request for Production 7, requesting "[a]ll documents and communications pertaining to demonstrations or protests in Graham, N.C., between April 1, 2020 and the present." Pls.' First Set of Common Reqs. For Produc. Of Docs. and Things to All Defs. 7 (hereinafter Pls.' Reqs.).

Defendants' withholding of these documents that are relevant to the claims and defenses in this case is contrary to Federal Rules of Civil Procedure 26 and 34. *See, e.g.*, Fed. R. Civ. P. 34(b)(2)(E)(ii) (requiring a producing party to produce documents and Electronically Stored Information (ESI) as they are kept in the ordinary course of business); *Vicro Mfg. Corp. v. Hertz Furniture Sys.*, 2014 U.S. Dist. LEXIS 199217, at \*14 (C.D. Cal. 2014) (collecting cases and holding "emails produced in discovery should be accompanied by their attachments or the attachments should be produced along with information sufficient to enable a receiving party to identify the email(s) to which the attachment corresponds."); *Abu Dhabi Commer. Bank v. Morgan Stanley & Co.*, 2011 U.S. Dist. LEXIS 95912, at \*19 (S.D.N.Y. 2011) ("A review of case law reveals many cases where there is an implication that attachments must be produced with e-mails (or identified via load file data)"); *Pom Wonderful LLC v. Coca Cola Co.*, 2009 U.S. Dist. LEXIS 134369, at \*6 (C.D. Cal. 2009) (compelling defendant "to provide plaintiff with either the ability to re-link the emails with attachments or re-produce the emails with their attachments."); *CP Solutions PTE, Ltd. v. GE*, 2006 WL 1272615, at \*4 (D. Conn. 2006) (finding that defendants had no license "to produce the e-mails and attachments in a jumbled, disorganized fashion.").[3]

Further, this deficiency is a violation of the ESI agreement contained in Plaintiffs' Rule 26(f) Report, adopted by the Court, in which the parties agreed and the Court ordered that "ESI shall be produced in a manner that does not break up document families (such as email and attachments), but the original ESI shall be preserved." ESI Protocols (1)(e)(i). Plaintiffs therefore request that the Graham Defendants identify all produced documents containing a family member

---

[2] The failure to produce these documents is particularly striking since it appears that Lt. Velez performed social media research on upcoming demonstrations using his personal computer and/or cell phone and then sent screen captures to his work email from his personal email. *See, e.g.*, GPD0015620.

[3] The failure to produce these documents also casts considerable doubt on the Graham Defendants' representations to the Court and in their discovery responses that no responsive documents exist and/or that their document production is complete.

that was not produced and produce those documents with properly established family relationships between the documents.

In sum, the Graham Defendants have not produced all responsive documents, and at least some of these deficiencies are likely due to under-inclusive search terms. It is thus necessary to expand the search terms applied over the documents collected by the Graham Defendants to include the following terms "justice 4 the next generation," "j4ng," "alamance alliance for justice," "aa4j," "march to the polls," "I am change march," "I am change," "march" w/4 "election," "march" w/4 "vote," "march" w/4 "polls," "march" w/4 "courthouse," "march" w/4 "October 31," "rally" w/4 "election," "rally" w/4 "vote," "rally" w/4 "polls," "rally" w/4 "courthouse," "rally" w/4 "October 31," "protest" w/4 "vote," "protest" w/4 "polls," "protest" w/4 "courthouse," "protest" w/4 "October 31." The Graham Defendants' deficient production further requires that these searches be applied across the entire text of the documents collected and not only subjects, titles, headers, and sender-recipient information.

Lastly, to the extent the deficiencies in Graham Defendants' production was caused by a failure to search certain sources, such as Lt. Velez's personal computer, it is appropriate at this time for Defendants to search all sources of individuals' personal communications.

**End Date of Document Production:** The Graham Defendants have not provided a date certain for the completion of their document production. The Court made it clear that the parties "shall not claim . . . any entitlement to make 'rolling' production on a time-table of their choosing." *See* Text Order Granting Mot. to Compel, ECF No. 73. Further, as you know, Federal Rule of Civil Procedure 34(b)(2)(B) states, "The production must then be completed no later than the time specified in the request or another reasonable time specified in the response." The 2015 Advisory Committee notes explain that "[w]hen it is necessary to make the production in stages the response should specify the beginning and end dates of the production." Thus, the Graham Defendants "must amend their responses to set out a reasonable production schedule with beginning and end dates." *J.P. v. Barr*, 2020 U.S. Dist. LEXIS 147290, at *5 (C.D. Cal. 2020); *see also Deakin v. Magellan Health, Inc.*, 2022 U.S. Dist. LEXIS 17676, at *9 (D.N.M. 2022) ("Rule 34 plainly requires Defendants to specify the end date by which they will complete their production of documents and ESI responsive to Plaintiffs' first set of requests for production. . . . Moreover, the end date must be within a reasonable period of time."); *Futreal v. Ringle*, 2019 WL 137587, at *6 (E.D.N.C. 2019) (citing 2015 Advisory Committee Note and recognizing that "the rules envision circumstances where parties make a production on an ongoing basis"); *Fischer v. Forrest*, 2017 WL 773694, at *3 (S.D.N.Y. 2017) ("[R]esponses [that] do not indicate when documents and ESI that defendants are producing will be produced" violate Rule 34); *Evox Prods. v. Kayak Software Corp.*, 2016 WL 10586303, at *4 (C.D. Cal. 2016) (responses that do "not specify the date for completion of [] production" violate Rule 34).

Instead of complying with this Order, the Graham Defendants have represented that "[t]he City of Graham will produce responsive, non-privileged documents in its possession, custody or control that it can locate." *See, e.g.*, Defs.' Resps. to Pls.' First Set of Req. for Interrogs. and Produc. of Docs. 12, 14-15 (hereinafter Defs. Resps.). Further contrary to the Order and the position taken by Defendants in their motion to compel on February 11, 2022—nine days after the Order-- the Graham Defendants made a third rolling production consisting of 507.7 megabytes of new data. The Graham Defendants' production likely remains incomplete, as illustrated by the

4

other deficiencies outlined in this letter. Plaintiffs request that Defendants complete their production by no later than March 7, 2022.[4]

**Metadata746310417.2 18-Feb-22 22:27:** The Graham Defendants have not provided sender-recipient information for some documents. Plaintiffs' Rule 26(f) Report, adopted by the Court, contains an ESI agreement providing that "each of the metadata and coding fields identified in the Chart labeled 'Production Metadata Fields'. . . that can be extracted from a document shall be produced for that document as part of the load file." Pls.' Rule 26(f) Report Add. A, ESI Case Protocols (1)(e)(iv), ECF. No. 32 (hereinafter ESI Protocols). This "Production Metadata Fields" Chart includes "From," "To," "CC," and "BCC" as agreed-upon information to be provided along with produced documents. *Id.* The Graham Defendants have not complied with this agreement and Court Order in that they have produced documents that lack these metadata fields. For example, GPD0013020 is a September 2021 email with the subject line "FW: Draft 2020 Drumwright" that does not appear to contain any information about the recipient(s) of the email. This deficiency is also a violation of Rule 34's requirement that ESI be produced in a "reasonably usable form," Fed. R. Civ. P. 34(b)(2)(E)(ii), because "[a]side from potentially bearing upon the merits of the case, metadata also may play a functional role in the usability of ESI," Sedona Conference, *The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Production* 170 (3d ed. 2018).[5] Without this information the document is not usable for the purpose of determining who was aware of the facts the document contains. Further, this sender-recipient information is not only missing from the metadata but is also missing from the face of the document. This information may be missing because it appears that the email was originally deleted, as the source of the document is /Exchange/kcole@cityofgraham.com (Primary)/Recoverable Items/Deletions. Accordingly, Plaintiffs request that Defendants provide the metadata related to the senders and recipients of this message and explain whether this email was deleted during the course of this litigation.[6]

The metadata used to determine whether GPD0013020 may have been deleted—the "FilePath" field—must also be produced according to the agreed-upon and court-ordered ESI Protocol. This metadata is useful to determine whether produced items had previously been deleted. Yet, Graham Defendants' February 11, 2022, production does not include this metadata. Plaintiffs thus request that the Graham Defendants supplement this production with a load file that includes this metadata by February 25, 2022.

---

[4] Moreover, we note that many of Defendants' positions taken in the briefing and oral argument concerning their December 9, 2021 motion to compel are in considerable tension with their own discovery responses and document productions.

[5] The Sedona Conference is a widely-used and respected publisher of electronic discovery resources. *See Country Vintner of N. Carolina, LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 252 n.2 (4th Cir. 2013).

[6] This example is merely illustrative. Plaintiffs have numerous other questions regarding the metadata associated with Defendants' document productions. *See, e.g.*, GPD0013025 (document listing custodian information as "GPD," rather than the name of the individual custodian); GPD0013031 (email with "source" information indicating that email may have been moved to "DiscoveryHolds" folder after litigation was filed, changing metadata associated with email); GPD0013034 (same issue regarding "DiscoveryHolds" folder); GPD0013044 (same issue regarding "DiscoveryHolds" folder); GPD0013053 (email metadata indicating that email sent after litigation was filed was deleted by document custodian).

5

### B. Deficiencies in Interrogatory Responses

**General Objections:**[7] The Graham Defendants' interrogatory answers begin with seven "general objections" that they "incorporate . . . into each and every response." *See* Gen. Obj. 8. In these general objections, the Graham Defendants object "to the extent that" Plaintiffs might propound "definitions and instructions that exceed the requirements set forth in Fed. R. Civ. P. 26, *et seq.*,"[8] Gen. Obj. 1, "vary . . . the ordinary meaning of English words," Gen. Obj. 2, seek information protected by the attorney-client privilege or attorney-work product, Gen. Obj. 3, information that is "confidential or otherwise protected information,"[9] Gen. Obj. 4, discovery that is "not relevant to the subject matter involved in the pending action and not proportional to the needs of the case," Gen. Obj. 5, propound "[d]iscovery [r]equests" that are, allegedly, "vague, ambiguous, complex, confusing, or unduly burdensome,"[10] and "require the[] Graham Defendants to provide or search for any information that is not within its possession and/or already possessed by Plaintiffs, Plaintiffs' counsel, or persons/entities who are not parties to this litigation," Gen. Obj. 7.

Federal Rule of Civil Procedure 33(b)(4) is clear: "The grounds for objecting to an interrogatory *must be stated with specificity*." Fed. R. Civ. P. 33(b)(4) (emphasis added). For more than a decade, district courts across the country, including in the Fourth Circuit, have explained that relying on general objections is improper. *See, e.g.*, *Paulino v. Dollar Gen. Corp.*, 2013 WL 1773892, at *12 (N.D. W.Va. 2013) (collecting cases and noting that boilerplate general objections "are highly disfavored in the Fourth Circuit."); *Walls v. Ford Motor Co.*, 2021 WL 1723154, at *11 (M.D.N.C. 2021) (Auld, M.J.) (disapproving of use of general objections and ordering defendant "supplement its discovery responses to the extent [it] previously withheld responsive information solely on the basis of its general objections"); *Martin v. Montgomery*, 2020 WL 6365352, at *3 (D.S.C. 2020) ("defendants' general, non-specific objections to the plaintiffs' interrogatories . . . are deemed waived."); *Ashghari-Kamrani v. U.S. Auto. Assoc.*, 2016 WL 11642670, at *2 (E.D. Va. 2016) (rejecting general objection that interrogatories were "vague, ambiguous, overly broad, and unduly burdensome" as an improper boiler plate objection); *Smith v. Bayer Material Sci., LLC*, 2013 WL 3153467, at *1 (N.D. W.Va. 2013) ("Any objection to discovery requests must be lodged with some specificity so that the requesting party, and the Court if it becomes involved, can ascertain the basis for the objection."); *Curtis v. Time Warner Entm't-*

---

[7] This issue pervades each of the Graham Defendants' interrogatory answers. Defendants Franks and Velez assert identical general objections.

[8] It is not clear what this general objection means. Rule 26 lays out a broad scope of discovery and addresses certain overarching issues in discovery such as proportionality and undue burden, but does not address instructions and definitions specifically. It is also unclear what is being meant by the use of the Latin "*et seq.*" It seems to imply that Plaintiffs should scour Rule 26 and the 59 rules of civil procedure that follow it to determine if their instructions and definitions are improper. To put it lightly, this general objection does little to explain the basis for the Graham Defendants' objection and whether an information was withheld on the basis of the objection.

[9] Again, it is unclear what this means. The Graham Defendants do not cite any statute, regulation, case law, or administrative interpretation that would allow for them to withhold information on this basis.

[10] This general objection does not explain which of the alternative bases for the objection apply to Plaintiffs' interrogatories. For example, the Graham Defendants do not explain which interrogatories are "vague," and which are "unduly burdensome." Moreover, the fact that an interrogatory is "complex" is not an objection recognized in any case law or the Federal Rules of Civil Procedure.

*Advance/Newhouse P'Ship*, 2013 WL 2099496, at \*2-3 (D.S.C. 2013) (providing general rules for efficient resolution of discovery disputes, including that parties shall not make "nonspecific, boilerplate objections"); *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 356 (D. Md. 2012) (collecting cases finding that failure to state an objection with specificity is grounds for a waiver of the objection); *Hager v. Graham*, 267 F.R.D. 486, 492 (N.D. W.Va. 2010) ("General objections to discovery, without more, do not satisfy the burden of the responding party under the Federal Rules of Civil Procedure to justify objections to discovery because they cannot be applied with sufficient specificity to enable courts to evaluate their merits."). *Cf. Vidal v. Metro-North Commuter R. Co.*, 2013 WL 1310504, at \*1 (D. Conn. 2013) (expressing "frustration" with the use of general objections in interrogatory answers because the practice "only serves to increase litigation expenses on motion practice, potentially extend deadlines for completion of discovery unnecessarily and delay resolution of cases."); *Jacoby v. Hartford Life & Accident Ins. Co.*, 254 F.R.D. 477, 478 (S.D.N.Y. 2009) ("boilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy . . . are a paradigm of discovery abuse.").

By March 7, 2022, please amend and supplement your interrogatory answers to (a) remove any general objections that the Graham Defendants are not relying upon to limit their answers to specific interrogatories and (b) state which interrogatory answers are limited by operation of your general objections and state the specific basis for the objection to the interrogatory.

**"Use of Force":**  The Graham Defendants object to Plaintiffs' definition of the phrase "use of force" because it relies on the American Law Institute's publication *Principles of the Law of Policing*, which the Graham Defendants do not believe is "authoritative." *See* Gen. Obj. 2.[11] Setting aside the fact that the Graham Defendants do not believe that a scholarly institute that has been publishing legal treatises for 99 years is "authoritative,"[12] the Graham Defendants do not provide an alternative definition of the phrase "use of force" that they used to formulate their interrogatory answers or explain whether they withheld information in response to Plaintiffs' interrogatories based on this objection.

By March 7, 2022, please amend and supplement your interrogatory answers to (a) remove this objection to the extent that the Graham Defendants are not relying upon this objection to limit their answers to specific interrogatories and (b) state which interrogatory answers are limited by operation of this objection.

**Limitation to "information within [Defendants'] possession":** General Objection 7 purports to object to the Graham Defendants providing interrogatory answers based on any information other than the information "within [their] possession." Gen. Obj. 7. This is improper. ourts reject unexplained general objections that "the information [Plaintiffs] seek[] is beyond

---

[11] The Graham Defendants also claimed that the draft was not generally available.  A quick Google™ search for the phrase "Principles of the Law, Policing" belies that objection. At any rate, it is found here: https://www.ali.org/media/filer_public/f2/80/f2804962-6431-4535-9649-34c5f872140e/policing-uof-online.pdf.

[12] Some of these treatises, such as the *Restatement of the Law of Torts*, *Restatement of the Law of Contracts*, *Uniform Commercial Code* are not only authoritative, they are available in any decent law library.

[Defendants] control" or that information is "already in the possession, custody, or control of [the Plaintiffs]." *Ashghari-Kamrani*, 2016 WL 11642670, at \*2.

By March 7, 2022, please amend and supplement your interrogatory answers to include information that is within the Graham Defendants' custody and control (as well as their possession).

**Interrogatory 2:** Interrogatory 2 asks the Graham Defendants to "[i]dentify all persons involved and/or consulted in the creation of the Public Safety Plan, described in paragraphs 79-80 of the First Amended Complaint." Rather than answering this interrogatory, the Graham Defendants provided an answer regarding the "primary individuals" that were "involved with and/or consulted regarding" "GPD's plans for the 10/31 event." *See* Interrog. 2. This answer is not responsive to Plaintiffs' interrogatory. The Graham Defendants have provided no reason for limiting their response to "primary individuals"—a term that is undefined—or failing to provide an answer that is specific to the Public Safety Plan. By March 7, 2022, please supplement and amend this answer to provide the information requested.

**Interrogatory 3:** Interrogatory 3 asks the Graham Defendants to "[i]dentify all ACSO and GPD personnel who were a part of the 'unified command' between Defendants and/or other law enforcement agencies during the March to the Polls, including their specific job assignments or duties and any and all policies, rules, ordinances, laws or procedures they were charged with enforcing." Interrog. 3. The Graham Defendants respond that the use of the term "unified command" "is somewhat of a misnomer" and insist that certain personnel were merely "co-locat[ed]" at an undisclosed location. *See* Interrog. 3. This answer is insufficient and incorrect. The "Fire/Medical OPS Plan" for the March to the Polls makes it clear that there was a "unified command." GPD0014148 at 149, 150, 151. Documents produced by the ACSO also refer to the existence of "the unified command." AL00086 at pg. 41; AL01251 at pgs. 2 & 4. The GPD's own Operation Plan for the March to the Polls contradicts any assertion of "misnomer:" "Command Type: Unified Command." GPD0013648 at 649; *see also* GPD0013719 at 720; GPD0013932 at 933. The GPD's public statements to the media following the March to the Polls also confirm the existence of a "unified command." GPD0014052.

By March 7, 2022, please amend and supplement your answer to this interrogatory to (a) acknowledge the existence of the unified command, (b) identify by name and rank each individual that participated in the unified command, and (c) described each individual's specific duty within the unified command.

**Interrogatory 4:** Interrogatory 4 asks the Graham Defendants to "[i]dentify all persons responsible for the decision to deploy the Special Response Team to the March to the Polls." Interrog. 4. In response, the Graham Defendants state that they "have no knowledge of and had no involvement with" such a decision. *See id.* This answer lacks credibility. It is clear that the ACSO deployed its Special Response Team. AL00086; AL01130. As noted above, the GPD and ACSO were a part of a "unified command" and that GPD officers took part in the unified command. *See, e.g.*, GPD0013648 at 649; GPD0013719 at 720; GPD0013932 at 933. It is difficult to believe that GPD officers were not privy to or responsible for the decision to deploy the Special Response Team. At the very least, these officers should enable the Graham Defendants to identify the individuals at the ACSO or unified command structure that made the decision to deploy the Special

8

Response Team. By March 7, 2022, please amend and supplement your answer to this interrogatory to identify the individual or individuals that were responsible for the decision to deploy the Special Response Team.

**Interrogatory 5:** Interrogatory 5 asks the Graham Defendants to "[i]dentify all GPD and ACSO personnel who used force, or authorized the use of force, on any Participant in the March to the Polls, and describe their justification for such use of force." Interrog. 5. In response, the Graham Defendants claim that they "do not have firsthand knowledge regarding uses of force by ACSO personnel." *Id.* The Graham Defendants further identify eight GPD officers that "[d]eployed OC vapor at the ground" and note that "OC vapor was applied to the roadway." *Id.* the interrogatory answer two deployments of OC vapor. *See id.* ("authorizing GPD's second deployment of OC vapor").

There are numerous problems with this response.

First, the notion that the Graham Defendants have no "firsthand knowledge" of uses of force by ACSO personnel is fanciful. The interrogatory is not limited to firsthand knowledge. And it is likely that the Graham Defendants have firsthand knowledge of uses of force by ACSO personnel because GPD officers were a part of the "unified command" overseeing the response to the March to the Polls and GPD officers were serving alongside ACSO deputies at the Historic Courthouse Square on October 31, 2020. *See, e.g.*, GPD0013648 at 649; GPD0013719 at 720; GPD0013932 at 933.

Second, the notion that GPD officers only "[d]eployed OC vapor at the ground" is belied by the documents. The contemporaneous timeline compiled by the GPD admits that a GPD officer "spayed a short burst of OC vapor spray into the air to disperse the crowd." GPD0013716 at 718. Contemporaneous photos of the March to the Polls indicate that OC vapor was sprayed into the air.



Third, drone video footage from the March to the Polls, which is available at Plaintiffs_0000775, shows that GPD officers and ACSO deputies at the Historic Courthouse Square on October 31, 2020 deployed OC vapor at least *six* times, not twice, as the Graham Defendants' answers suppose. *See* Plaintiffs_0000775 at 11:15-16, 11:20-21, 11:22-23, 11:26-27,

9

11:28-29, 11:34-39). The Graham Defendants were well aware of this drone footage. They briefed the media using the same footage shortly after the March to the Polls. *See, e.g.*, Plaintiffs_0000002. The Graham Defendants' own report concerning the March to the Polls indicates that OC vapor was deployed at least three times at 12:06pm, 1:11pm, and 1:17pm. *See* GPD0013648 at 655.

Third, it is not clear what the phrase "OC vapor was applied to the roadway" means. Notably, the sentence is passive and therefore does not explain who "applied" the OC vapor. It also omits key facts. Participants in the March to the Polls were in the vicinity when the OC vapor "was applied to the roadway."

By March 7, 2020, please amend and supplement your interrogatory answer to (a) include the fact that OC vapor was sprayed in the air, (b) properly identify the number of times that OC vapor was deployed and sprayed, and (c) remove passive voiced sentences from your description of events that obscure who deployed OC spray, where that spray was deployed, and whether the spray was intended to, or did, hit any of the participants in the March to the Polls.

**Interrogatory 6:** Interrogatory 6 asks the Graham Defendants to "[i]dentify all persons responsible for training GPD and ACSO personnel in use of force tactics, crowd control tactics, de-escalation techniques, and First and Fourth Amendment rights between April 1, 2020 and October 31, 2020, including the dates of training along with the identity of the trainer." Interrog. 6. In response, the Graham Defendants state that "[t]raining record documents will be produced from which responses to this interrogatory can be derived." *Id.*

This answer is insufficient. Rule 33(d) requires the answering party to provide "sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained." Fed. R. Civ. P. 33(d). In other words, the answering party must "specify, by category and location, the records from which answers to interrogatories can be derived." *Am. Rockwool v. Owens-Corning Fiberglas Corp.*, 109 F.R.D. 263, 266 (E.D.N.C. 1985) (quotation omitted). Therefore, "directing the opposing party to an undifferentiated mass of records is not a suitable response to a legitimate [interrogatory]." *Id.*; *see also Hillyard Enters., Inc. v. Warren Oil Co., Inc.*, 2003 WL 25904133, at \*2 (E.D.N.C. 2003) (describing one of the "prerequisite[s]" to the used of Rule 33(d) as "specify[ing] for each interrogatory the actual documents where information will be found."). As other district courts in the Fourth Circuit put it, "a party must therefore identify the particular document or documents within a production that will answer the interrogatory." *Minter v. Wells Fargo Bank, N.A.*, 286 F.R.D. 273, 278 (D. Md. 2012).

The Graham Defendants have not done so here. Instead, they refer to an undifferentiated mass of documents and ask Plaintiffs to comb through them to find the answer. That is not what Rule 33(d) permits. By March 7, 2022, please amend and supplement your interrogatory answer to include the Bates numbers of the documents that you have produced pursuant to Rule 33(d) in response to interrogatory 6.

**Interrogatory 7:** Interrogatory 7 asks the Graham Defendants to "[d]escribe in detail any and all property that was damaged or vandalized in the course of the March to the Polls." Interrog. 7. In response, the Graham Defendants refer to an alleged assault on an ASCO deputy, participants in the March to the Polls blocking traffic, and an alleged battery to a GPD officer. *See id.*

10

"The answers to interrogatories must be responsive, full, complete, and unevasive." *C & T Mfg. Co., Inc. v. Hartford Fire Ins. Co.*, 2010 WL 3803419, at *1 (D.S.C. 2010); *see also* Fed. R. Civ. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."); *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 573 (D. Md. 2010) (same). Here, rather than providing an answer regarding damage or vandalism to property, the Graham Defendants have provided a non-responsive and evasive answer. Accordingly, by March 7, 2022, please amend and supplement this interrogatory answer to provide an answer that responds to the interrogatory posed.

**Lack of Verification:** As you know, Rule 33(b)(5) requires "[t]he person who makes the answers" to "sign them." Fed. R. Civ. P. 33(b)(5). No such signature is evident on the face of the Graham Defendants' interrogatory answers. Please provide a signed version of Defendants' answers by March 7, 2022.

### C. Deficiencies in Graham Defendants' Initial Disclosures

Rather than providing initial disclosures on a defendant-by-defendant basis, the Graham Defendants provided a consolidated initial disclosure that provides a list of the individuals with knowledge that *any* of the Graham Defendants may rely upon for *any* of their defenses. This is improper. Federal Rule 26(a) is clear "a party" must provide certain information to "the other parties" "without awaiting a discovery request." Fed. R. Civ. P. 26(a)(1); *see also Randolph v. PowerComm Const., Inc.*, 309 F.R.D. 349, 362 (D. Md. 2015) (noting that Rule 26(a) requires disclosures from "each party"); *Manion v. Spectrum Healthcare Resources*, 2013 WL 12430030, at *2 (E.D.N.C. 2013) ("Rule 26(a)(1) requires each party to provide certain documents and information without receiving any request for them from the other parties."); *Meadows v. Allstate Ins. Co.*, 2006 WL 8438709, at *2 (S.D. W.Va. 2006) (noting that this duty applies to "each party").

Moreover, Federal Rule of Civil Procedure 26(a) "seeks 'to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information.'" *Thurby v. Encore Receivable Mgmt., Inc.*, 251 F.R.D. 620, 621 (D. Colo. 2008) (quoting Fed. R. Civ. P. 26 advisory committee's note, 1993 amend.). These disclosures are meant to "streamline discovery and thereby avoid the practice of serving multiple, boilerplate interrogatories and document requests, which themselves bring into play a concomitant set of delays and costs." *Chalick v. Cooper Hosp./Univ. Med. Ctr.*, 192 F.R.D. 145, 150 (D.N.J. 2000). Here, the Graham Defendants' failure to provide a list of the individuals and documents that *each defendant* believes will support its defense runs the risk of necessitating needless discovery requests to ferret out which of the Graham Defendants are relying on which of the persons and documents listed in the consolidated initial disclosures for their defenses.

Accordingly, please confirm that the Graham Defendants will serve individualized responses to Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii) by March 7, 2022.

## II. Deficiencies in Alamance Defendants' Discovery Responses

### A. Deficiencies in Document Production

**Missing Documents:** The Alamance Defendants have produced only nine emails from Sheriff Terry Johnson, all of which are external communications and none of which involve

11

internal communications providing any guidance or assessment regarding the March to the Polls. *See, e.g.*, AL01244. Plaintiffs request that the Alamance Defendants confirm that they have conducted a diligent search for all email, texts, and other responsive communications and that Defendant Johnson had no responsive communications with Alamance County Sheriff's Office or Graham personnel, including on personal devices, regarding the March to the Polls, or, otherwise, that the Alamance Defendants produce any responsive communications in Defendants' possession from any source.

**End Date of Document Production:** The Alamance Defendants, like the Graham Defendants, have not provided a date certain for the completion of their document production. The Court's Order prohibiting rolling productions, *see* Text Order Granting Mot. to Compel, ECF No. 73, likewise requires the Alamance Defendants make a final production by a date certain that fulfills their obligations under Rule 34. Because the other deficiencies outlined in this letter indicate that Alamance Defendants' production is very likely incomplete, Plaintiffs request that the Alamance Defendants provide a date certain by which their production will be complete.

**Metadata:** The Alamance Defendants' first production (AL00001-AL01073) contains text in the metadata load file that prevents extraction of the metadata. Functionally, therefore, no metadata has been provided for the production, in violation of the ESI agreement and court order that provides that "metadata and coding fields identified . . . shall be produced for that document as part of the load file," ESI Protocols (1)(e)(iv). Additionally, in contravention of this agreement and the Court's Order, the Alamance Defendants' second production (AL01074 - AL05287) lacks "confidentiality" and "redacted" metadata fields. Plaintiffs request the Alamance Defendants produce a load file that removes the obstructing text related to the deficiency in the first production and includes all metadata fields for the second production.

### B. Deficiencies in Interrogatory Responses

**Interrogatory 3:** Interrogatory 3 asks the Alamance Defendants to "[i]dentify all ACSO and GPD personnel who were a part of the 'unified command' between Defendants and/or other law enforcement agencies during the March to the Polls, including their specific job assignments or duties and any and all policies, rules, ordinances, laws or procedures they were charged with enforcing." Interrog. 3. The Alamance Defendants respond that "[t]he Defendants utilized an incident command system modeled after the National Incident Management System," and provide further detail on the ASCO deputies involved. *See id.* By March 7, 2022, please explain whether you use the terms "unified command" and "national incident management system" synonymously, and how your answer can be squared with the Graham Defendants' answer indicating that there was no "unified command."

**Interrogatory 4:** Interrogatory 4 asks the Alamance Defendants to "[i]dentify all persons responsible for the decision to deploy the Special Response Team to the March to the Polls." Interrog. 4. In response, the Alamance Defendants state that members of the Special Response Team were present at the March to the Polls, but that the Special Response Team was not deployed to the March to the Polls. *See id.*

This distinction is not supported by the discovery record. Defendants' own documents indicate that "[u]tilization of SRT is recommended during known demonstrations or events in

which large crowds of people are anticipated." GPD0011994 at 996. The materials produced by the Alamance Defendants also make it clear that "the SRT leader for the operation" was "on one of the top steps of the North side of the [Historic] courthouse." AL00086 at pg. 26. Another ASCO deputy in the same area was "wearing his Alamance County Sheriff's Office SRT [u]niform." *Id.* According to the same document, "several SRT members" were also in the same area at the same time. *Id.* (noting that there were "15 to 20" members of the SRT on sight).

ASCO Deputy David Triolo makes it clear in his near-contemporaneous account of the events of October 31, 2020 that he "was assigned as the SRT Liaison to assist the ASCO Operations Division in the management of" the March to the Polls. AL00086 at pg. 41. He explained that the "*SRT deployment* at the courthouse consisted of a small Overwatch and Security element located on the rooftop of the courthouse, a 2 man chemical device deployment team, and the Orange County SRT including 4 pepperball launchers and operators." *Id.* (emphasis added). Deputy Triolo notes that the SRT assembled and staged within the Historic Courthouse outside the view of participants in the March to the Polls. *Id.*

In summary, Defendants' documents show that (a) the SRT Liaison indicated that the SRT was deployed on October 31, and (b) multiple SRT members staged in the Historic Courthouse. As a result, the Alamance Defendants' interrogatory answer is factually incorrect. By March 7, 2020, please amend and supplement this interrogatory answer to correct this factual error.

**Interrogatory 6:** Interrogatory 6 asks the Alamance Defendants to "[i]dentify all persons responsible for training GPD and ACSO personnel in use of force tactics, crowd control tactics, de-escalation techniques, and First and Fourth Amendment rights between April 1, 2020 and October 31, 2020, including the dates of training along with the identity of the trainer." Interrog. 6. In response, the Alamance Defendants provide a description of four "Mobile Field Force training sessions," and then state "[c]opies of all training records referenced in this response are being provided." *Id.*

This answer is insufficient for two reasons.

First, it is unclear why the Alamance Defendants limited their answer to trainings provided to ACSO's Mobile Field Force. As noted above, members of the SRT were deployed to the Historic Courthouse. Accordingly, this interrogatory answer should be amended to include information on training provided to the SRT.

Second, Rule 33(d) requires the answering party to provide "sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained." Fed. R. Civ. P. 33(d). In other words, the answering party must "specify, by category and location, the records from which answers to interrogatories can be derived." *Am. Rockwool v. Owens-Corning Fiberglas Corp.*, 109 F.R.D. 263, 266 (E.D.N.C. 1985) (quotation omitted). Therefore, "directing the opposing party to an undifferentiated mass of records is not a suitable response to a legitimate [interrogatory]." *Id.*; *see also Hillyard Enters., Inc. v. Warren Oil Co., Inc.*, 2003 WL 25904133, at *2 (E.D.N.C. 2003) (describing one of the "prerequisite[s]" to the used of Rule 33(d) as "specify[ing] for each interrogatory the actual documents where information will be found."). As other district courts in the Fourth Circuit put it, "a party must therefore identify the particular document or documents within a production that

13

will answer the interrogatory." *Minter v. Wells Fargo Bank, N.A.*, 286 F.R.D. 273, 278 (D. Md. 2012).

The Alamance Defendants have not done so here. Instead, they refer to an undifferentiated mass of documents and ask Plaintiffs to comb through them to find the answer. That is not what Rule 33(d) permits. By March 7, 2022, please amend and supplement your interrogatory answer to (a) include the training provided to the STR, and (b) include the Bates numbers of the documents that you have produced pursuant to Rule 33(d) in response to interrogatory 6.

**Lack of Verification:** As you know, Rule 33(b)(5) requires "[t]he person who makes the answers" to "sign them." Fed. R. Civ. P. 33(b)(5). No such signature is evident on the face of the Alamance Defendants' interrogatory answers. Please provide a signed version of Defendants' answers by March 7, 2022.

### C.       Deficiencies in Alamance Defendants' Initial Disclosures

Rather than providing initial disclosures on a defendant-by-defendant basis, the Alamance Defendants provided a consolidated disclosure of a list of the individuals with knowledge that *any* of the Alamance Defendants may rely upon for *any* of their defenses. This is improper. Federal Rule 26(a) is clear "a party" must provide certain information to "the other parties" "without awaiting a discovery request." Fed. R. Civ. P. 26(a)(1); *see also Randolph v. PowerComm Const., Inc.*, 309 F.R.D. 349, 362 (D. Md. 2015) (noting that Rule 26(a) requires disclosures from "each party"); *Manion v. Spectrum Healthcare Resources*, 2013 WL 12430030, at *2 (E.D.N.C. 2013) ("Rule 26(a)(1) requires each party to provide certain documents and information without receiving any request for them from the other parties."); *Meadows v. Allstate Ins. Co.*, 2006 WL 8438709, at *2 (S.D. W.Va. 2006) (noting that this duty applies to "each party").

Moreover, Federal Rule of Civil Procedure 26(a) "seeks 'to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information.'" *Thurby v. Encore Receivable Mgmt., Inc.*, 251 F.R.D. 620, 621 (D. Colo. 2008) (quoting Fed. R. Civ. P. 26 advisory committee's note, 1993 amend.). These disclosures are meant to "streamline discovery and thereby avoid the practice of serving multiple, boilerplate interrogatories and document requests, which themselves bring into play a concomitant set of delays and costs." *Chalick v. Cooper Hosp./Univ. Med. Ctr.*, 192 F.R.D. 145, 150 (D.N.J. 2000). Here, the Alamance Defendants' failure to provide a list of the individuals and documents that *each defendant* believes will support its defense runs the risk of necessitating needless discovery requests to ferret out which of the Alamance Defendants are relying on which of the persons and documents listed in the consolidated initial disclosures for their defenses.

Accordingly, please confirm that the Alamance Defendants will serve individualized responses to Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii) by March 7, 2022.

* * *

Please let us know when we should expect to receive the complete productions that address all of the deficiencies outlined in this letter. We ask that you meet and confer with us on or before February 25 to discuss any disagreements you may have and to resolve these disagreements without the need for motion practice.

14

Sincerely,


LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW


Elizabeth Haddix
Jennifer Nwachukwu

ACLU of NORTH CAROLINA
Jaclyn Maffetore
Kristi L. Graunke
Daniel K. Siegel

MAYER BROWN, LLP
Michael Bornhurst
Geoff Pipoly
Holly Farless

15