# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:20-cv-00998-CCE-LPA**

| | |
|---|---|
| GREGORY DRUMWRIGHT, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>TERRY JOHNSON, individually and in his official capacity as Alamance County Sheriff*, et al.*,<br><br>*Defendants*. | **City of Graham and Police Chief Kristy Cole's Responses to Plaintiffs' First Set of Requests for Interrogatories and Production of Documents** |

NOW COMES the City of Graham and its Chief of Police Kristy Cole (collectively "these Graham Defendants"), pursuant to Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure, by and through undersigned counsel, hereby respond, produce, and object to Plaintiffs' First Set of Interrogatories, and First Set of Requests for Production (Collectively "Plaintiffs' Discovery Requests").

These Graham Defendants' responses to part or all of any interrogatory or request is not intended to and shall not be construed to be a waiver by these Graham Defendants of any part of any objection to any interrogatory or request, including objections that the information sought is subject to the Attorney-Client Privilege, constitutes attorney work-product, confidential and subject to the September 2, 2021 Consent Protective Order, or is otherwise privileged or immune from discovery under the Federal Rules of Civil Procedure, Federal Rules of Evidence, or other applicable rules, statutes, or case law.

1

# General Objections

1. These Graham Defendants object to Plaintiffs' Definitions and Instructions to the extent that such definitions and instructions exceed the requirements set forth in Fed. R. Civ. P. 26, *et seq*. Without waiving this objection, these responses were prepared in accordance with the applicable Rules of Civil Procedure, not Plaintiffs' instructions.

2. These Graham Defendants object to Plaintiffs' Definitions to the extent that such definitions vary from the ordinary meaning of English language words. These Graham Defendants specifically object to the "use of force" definition's reliance upon the "Principles of Law" publication, which was not provided with the requests nor generally known or recognized as authoritative.

3. These Graham Defendants object to Plaintiffs' Discovery Requests to the extent that they seek information and/or documents that are protected from discovery by the attorney-client privilege, the work product doctrine and/or any other applicable privilege, doctrine, exemption, or immunity. The production of any document otherwise protected by the attorney-client, work product, or other privilege is not and should not be considered a waiver of any privilege or objection to production.

4. These Graham Defendants object to Plaintiffs' Discovery Requests to the extent that they require the disclosure of confidential or otherwise protected information.

5. These Graham Defendants object to Plaintiffs' Discovery Requests to the extent that they seek information that is not relevant to the subject matter involved in the pending action and not proportional to the needs of the case.

6. These Graham Defendants object to Plaintiffs' Discovery Requests to the extent they are overly broad, vague, ambiguous, complex, confusing, or unduly burdensome.

7. These Graham Defendants object to Plaintiffs' Discovery Requests to the extent that they require these Graham Defendants to provide or search for any information that is not within its possession and/or is already possessed by Plaintiffs, Plaintiffs' counsel, or persons/entities who are not parties to this litigation.

8. By responding to, or answering these requests, These Graham Defendants do not waive any objection and incorporate these general objections into each and every response.

9. These Graham Defendants reserve the right to supplement these responses as discovery and investigation continue.

## RESPONSE TO INTERROGATORIES

**Interrogatory No. 1:** Identify and describe any and all briefings or meetings in which any Defendants participated to prepare for the March to the Polls, including the date, time, location, topics and materials reviewed or discussed, and identification of all participants.

**Answer:** These Graham Defendants object to this Request as overly broad and unduly burdensome. The term "meeting" is so broad it literally includes interactions between any two or more people. Further, these Graham Defendants did not maintain a registry of "meetings" regarding the Drumwright October 31 event. To the best of the knowledge, these Graham Defendants identify the following:

October 13, 2020—City Council Meeting—Drumwright, Bryan Coleman (City Attorney), Chip Turner (Mayor Pro Tem Graham), Frankie Maness (City Manager), Melody Wiggins (Council Member), Ricky Hall (Council Member), Nathan Page (City Planning Director), Jerry Peterman (Mayor), Jennifer Talley (Council Member). The City Council considered Drumwright's request to hold a march. Since Drumwright missed the deadline to be

3

placed on the agenda, the City Council was unable to vote on his request, but they spent 13 minutes discussing it and directed Drumwright to coordinate logistics with then interim Chief Cole and GPD to plan a safe event.

October 20, 2020, 9am, Graham Police Department ("GPD") —Drumwright met with City and GPD representatives and ACSO representatives. Participants included Fire Chief Tommy Cole, Police Chief Cole, Sykes, Drumright, Velez, Flood, and Sisk. GPD presented Drumwright with different route options for the march and different options for holding the rally in downtown Graham, including obtaining a permit from Alamance County for utilization of the grounds of the historic courthouse. The options GPD presented to Drumwright for consideration were as follows:

Option 1
The following plan will be utilized in the event that Rev. Drumwright secures a permit for using the Historic Courthouse grounds for the rally portion of his event.
- Participants will gather at Wayman's Chapel AME Church located at 592 N. Main Street and the march will begin there.
- Participants will march on the roadway of N. Main St. from the start location to the municipal parking lot located across from the Mex-Am Restaurant in the 200 block of N. Main St. to reorganize.
- Participants will then utilize sidewalks and crosswalks, obeying all pedestrian and applicable traffic laws, to proceed to the grounds of the Historic Courthouse.
- Once the rally portion of the event is concluded, participants may disperse and move to the early voting site, located at the Alamance County Office Annex Building on 201 W. Elm Street, at their discretion.
- The Graham Police Department and their partners will handle traffic control and public safety responsibilities for the duration of the event.
- Participants will not be allowed to walk/gather in any public street except for the area previously described in this document.

Option 2
The following points will detail the route for the march, location of the rally, dispersal point, prohibited activities, etc.
- Participants will gather at Wayman's Chapel AME Church located at 592 N. Main Street and the march will begin there.
- Participants will march on the roadway of N. Maple St. from the start location to the municipal parking lot located on the 500 block of N. Maple St. to reorganize for the rally portion of the event. This location will be appropriate for a stage to be erected if the organizer chooses to do so.

4

- Once the rally portion of the event is concluded, participants may disperse and move to the early voting site, located at the Alamance County Office Annex Building on 201 W. Elm Street, at their discretion.
- The Graham Police Department and their partners will handle traffic control and public safety responsibilities for the duration of the event.
- Participants will not be allowed to walk/gather in any public street except for the area previously described in this document.
- Participants must also not interfere with the operation of businesses or private property in the city.

Option 3

The following points will detail the route for the march, location of the rally, dispersal point, prohibited activities, etc.

- Participants will gather at Wayman's Chapel AME Church located at 592 N. Main Street and the march will begin there.
- Participants will march on the roadway of N. Maple St. from the start location to the 500 block of N. Maple St. to reorganize for the rally portion of the event. Graham Police Department will close the portion of N. Maple St between W. Market St and W. Harden St. The rally will take place here for one hour. No stage will be erected in the roadway.
- Once the rally portion of the event is concluded, participants may disperse and move to the early voting site, located at the Alamance County Office Annex Building on 201 W. Elm Street, at their discretion.
- The Graham Police Department and their partners will handle traffic control and public safety responsibilities for the duration of the event.
- Participants will not be allowed to walk/gather in any public street except for the area previously described in this document.
- Participants must also not interfere with the operation of businesses or private property in the city.

Option 4

The following points will detail the route for the march, location of the rally, dispersal point, prohibited activities, etc.

- Participants will gather at Wayman's Chapel AME Church located at 592 N. Main Street and the march will begin there.
- Participants will march on the roadway of N. Main St. from the start location to the municipal parking lot located across from the Mex-Am Restaurant located in the 200 block of N. Main St. to reorganize for the rally portion of the event. The rally will take place here. A stage may be erected here if the organizer so chooses.
- Once the rally portion of the event is concluded, participants may disperse and move to the early voting site, located at the Alamance County Office Annex Building on 201 W. Elm Street, at their discretion.
- The Graham Police Department and their partners will handle traffic control and public safety responsibilities for the duration of the event.
- Participants will not be allowed to walk/gather in any public street except for the area previously described in this document.

5

- Participants must also not interfere with the operation of businesses or private property in the city.

Option 5

The following points will detail the route for the march, location of the rally, dispersal point, prohibited activities, etc.
- Participants will gather at Wayman's Chapel AME Church located at 592 N. Main Street and the march will begin there.
- Participants will march on the roadway of N. Main St. from the start location to the 200 block of N. Main St. to reorganize for the rally portion of the event. The Graham Police Department will close N. Main Street between Market St. and Harden St. The rally will take place here for one hour. No stage will be erected in the roadway.
- Once the rally portion of the event is concluded, participants may disperse and move to the early voting site, located at the Alamance County Office Annex Building on 201 W. Elm Street, at their discretion.
- The Graham Police Department and their partners will handle traffic control and public safety responsibilities for the duration of the event.
- Participants will not be allowed to walk/gather in any public street except for the area previously described in this document.
- Participants must also not interfere with the operation of businesses or private property in the city.

Following the meeting, Cole and Sykes escorted Drumwright to the ACSO to assist him in applying for a permit to utilize the historic Alamance County Courthouse.

October 22, 2020, Zoom video conference – Flood, representatives from ACSO and from the County Government, and Kathy Holland; discussed concerns and guidelines regarding how close to the polls protesting could take place, law enforcement presence near the polls, and procedures to be followed if the polls were to have to close due to safety concerns.

October 27, 2020, GPD —Flood, Graham Fire Department representatives, City of Graham Public Works representatives, Alamance County Emergency Management representatives, and ACSO representatives met to further discuss planning for the 10/31 event.

October 28, 2020, GPD — Flood, Velez and other GPD staff met to discuss and work on the GPD operational plan for the 10/31 event.

October 29, 2020, GPD — Flood, Velez and other GPD staff met to discuss and finalize the GPD operational plan for the 10/31 event.

6

October 30, 2020 Zoom Meeting — Drumwright, Haddix, Hill, Parker, Cole, Sykes, and Albright discussed planning and logistics for the 10/31 event.

October 30, 2020 Greensboro — Cole conferred with Greensboro Police Captain March and Sgt. Denny regarding Drumwright's 10/30 event in Greensboro.

October 31, 2020, GPD — Flood briefed the October 31 GPD assigned personnel on GPD's operational plans for the 10/31 event; two officers from the Gibsonville police department, Detective David Sykes and Officer Craig Andrews, as well as State Highway Patrol officers who were assisting GPD with the event also attended the briefing.

October 31, 2020, Cole and Peterman met at Wayman's Chapel on North Main Street and College Street for purposes of conferring with Drumwright prior to the march. Drumwright did not show. Velez met with a representative for Drumwright regarding march related issues prior to the march at the same location.

October 13 – Nov 3 – Cole and Maness regularly conferred regarding the 10/31 event.

**Interrogatory No. 2:** Identify all persons involved and/or consulted in the creation of the Public Safety Plan, described in paragraphs 79-80 of the First Amended Complaint.

**Answer:** To the best of their knowledge, these Graham Defendants identify the following as having been the primary individuals involved with and/or consulted regarding GPD's plans for the 10/31 event: Maness, Cole, Holland, Flood, Sisk, Velez, and that the GPD plan informed the public safety plan.

**Interrogatory No. 3:** Identify all ACSO and GPD personnel who were part of the "unified command" between Defendants and/or other law enforcement agencies during the March to the

7

Polls, including their specific job assignments or duties and any and all policies, rules, ordinance, laws or procedures they were charged with enforcing.

**Answer:** These Graham Defendants object to this Request as overly broad and vague in requesting a recitation of all policies, rules, ordinance, laws or procedures the "unified command" were "charged" with enforcing. For the GPD, the "unified command" was charged with upholding the laws of the State of North Carolina, the ordinances of the City of Graham, and the operational plans for the 10/31 event. The City also objects to the phrase, "who were part of the unified command." The term "unified command" is somewhat of a misnomer. Command over the relevant agencies was not "unified," but the commanders were unified in their objective to maintain the orderly peace and security of the event. To that end, the "unified command" comprised the co-location of GPD, Mayor Peterman, Graham Fire Department ("GFD") and ACSO's operational commanders. GPD's operational commander was Flood. GFD's operational commander was Tommy Cole. ACSO's operational commander was Sykes. A dispatcher was also present.

**Interrogatory No. 4:** Identify all persons responsible for the decision to deploy the Special Response Team to the March to the Polls.

**Answer:** These Graham Defendants have no knowledge of and had no involvement with any decision to deploy a special response team at or to the 10/31 event.

**Interrogatory No. 5:** Identify all GPD and ACSO personnel who used force, or authorized the use of force, on any Participant in the March to the Polls, and describe their justification for each such use of force.

**Answer:** These Graham Defendants object to this Request as overly broad and unduly burdensome and as outside the scope of their firsthand knowledge. These Graham Defendants do not have firsthand knowledge regarding uses of force by ACSO personnel. These Graham Defendants further object to Plaintiffs' definition of "use of force." For purposes of Plaintiffs' claims, the Plaintiffs' definition is too broad. Specifically, "use of force" for purposes of constitutional excessive force claims is a legal term of art. These Graham Defendants do not have knowledge of ACSO personnel who used force or authorized use of force in the March to the Polls. These Graham Defendants also object to producing arrest records and information regarding individuals who are not parties to this lawsuit as such information is not relevant to the claims in dispute. These Graham Defendants further object that deploying OC vapor directed at the ground is not an actionable "use of force" for purposes of Plaintiffs' claims.

Subject to these objections, these Graham Defendants identify the following:

1) GPD Officer Eric Jordan — effected arrest of Plaintiff Avery Harvey for refusal to follow a lawful order to return to the designated protest area.

2) GPD Sergeant Rodney King—Deployed OC vapor at the ground, which is not an actionable use of force. Protestors failed to disperse from public highway after ordered to do so. OC vapor was applied to the roadway to affect dispersal. Approximately one hour thereafter, unlawful assembly was declared, and subjects refused to disperse from area after being told to do so multiple times. OC vapor was applied to the roadway to effect dispersal.

3) GPD Sergeant John Way—Deployed OC vapor at the ground, which is not an actionable use of force, after the assembly was declared unlawful, and subjects refused to disperse

from area after being told to do so multiple times. OC vapor was applied to the roadway to effect dispersal.

4) GPD Officer Justin Hopkins— Deployed OC vapor at the ground, which is not an actionable use of force, after the assembly was declared unlawful, and subjects refused to disperse from area after being told to do so multiple times. OC vapor was applied to the roadway to effect dispersal.

5) GPD Officer Chad Boggs— Deployed OC vapor at the ground, which is not an actionable use of force, after the assembly was declared unlawful, and subjects refused to disperse from area after being told to do so multiple times. OC vapor was applied to the roadway to effect dispersal.

6) GPD Sergeant Keith Kirkman— Deployed OC vapor at the ground, which is not an actionable use of force, after the assembly was declared unlawful, and subjects refused to disperse from area after being told to do so multiple times. OC vapor was applied to the roadway to effect dispersal.

7) GPD Officer Eric Jordan— Deployed OC vapor at the ground, which is not an actionable use of force, after the assembly was declared unlawful, and subjects refused to disperse from area after being told to do so multiple times. OC vapor was applied to the roadway to effect dispersal.

8) GPD Officer Robert Parks— Deployed OC vapor at the ground, which is not an actionable use of force, after the assembly was declared unlawful, and subjects refused to disperse from area after being told to do so multiple times. OC vapor was applied to the roadway to effect dispersal.

9) GPD Corporeal Scott Neudecker— Deployed OC vapor at the ground, which is not an actionable use of force, after the assembly was declared unlawful, and subjects refused to disperse from area after being told to do so multiple times. OC vapor was applied to the roadway to effect dispersal.

10) GPD Lieutenant Flood – Authorized GPD's deployment of OC vapor.

11) GPD Lieutenant Velez – Participated in authorizing GPD's second deployment of OC vapor, after Flood declared the protest an unlawful gathering and after warnings to disperse were given.

**Interrogatory No. 6:** Identify all persons responsible for training GPD and ACSO personnel in use of force tactics, crowd control tactics, de-escalation techniques, and First and Fourth Amendment rights between April 1, 2020 and October 31, 2020, including the dates of training along with the identity of the trainer.

**Answer:** These Graham Defendants object to this Request as overly broad and unduly burdensome. These Graham Defendants do not have knowledge of all persons responsible for training ACSO personnel. Training record documents will be produced from which responses to this interrogatory can be derived.

**Interrogatory No. 7:** Describe in detail any and all property that was damaged or vandalized in the course of the March to the Polls, including a description of the location of the damaged property, a description of the damage, the timing of the damage, and identity of individual causing the damage.

11

**Answer:** Protestors blocked traffic in State Highway 87 despite repeated orders to clear the street; protestors assaulted and caused physical harm to ACSO Deputy Barbara Tomey as she attempted to remove a gas can and gas generator from the historic Alamance County Courthouse grounds; protestor Julius Walton physically battered and ripped away the traffic vest and body worn camera of GPD Sgt. John Way on NW Court Square.

**RESPONSE TO REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

**Request for Production No. 1**: All documents and communications between You and Plaintiffs and their known representatives or that refer to or are related to Plaintiffs and their known representatives.

**Answer:** These Graham Defendants object to this Request as overly broad and unduly burdensome. These Graham Defendants object to this Request as vague and ambiguous because the phrase "are related to Plaintiffs and their known representatives" is unclear and undefined, as the term "related" can have a plethora of meanings. Additionally, the phrase "all documents and communications" is undefined and encompasses an infinite time frame. These Graham Defendants further object to the definition of "You." The City of Graham does not maintain the capability to electronically search document contents for information that refers to or relates to Plaintiffs and their known representatives. These Graham Defendants do not maintain or have access to documents or communications maintained by ACSO Defendants.

Subject to and without waiving its objections The City of Graham will produce responsive, non-privileged documents in its possession, custody or control that it can locate. Specifically, the City of Graham will produce all emails wherein the sender or recipient is identified by a keyword serach as Gregory Drumwright, Edith Ann Jones, Quenclyn Ellison,

Faith Cook, Melanie Mitchell, Janet Nesbitt, Ernestine Lewis Ward, Edith Ward and any documents that reference Plaintiffs' name in the file name of the document. Defendant Cole has no documents in her individual capacity responsive to this request.

**Request for Production No. 2:** All documents related to planning and/or preparing for the March to the Polls, including operations plans, public safety plans, assignments, staffing rosters, memoranda, or any such other document created to plan or prepare for the March to the Polls.

**Answer:** These Graham Defendants object to this Request as overly broad and unduly burdensome. The phrase "related to" is vague and would require a manual review of thousands of communications to determine whether they might be "related to" the event. Subject to and without waiving its objections, the City of Graham searched for, and will produce, all nonprivileged emails that contain the phrase "March to the Polls" and all nonprivileged documents it could locate that contain that phrase in the name of the file. The City of Graham is also producing its operational plan for the October 31 event. Defendant Cole has no documents in her individual capacity responsive to this request.

**Request for Production No. 3:** All other documents related to the March to the Polls, including but not limited to communications within and between Defendants and/or between or among individual ACSO and GPD personnel or their agents and between Defendants and any public official; communications with election officials and/or individuals working at the West Elm Polling location in Graham, N.C.; notes, memoranda, talking points, press releases and/or public statements and drafts thereof; and documents pertaining to any injuries suffered by GPD or ACSO personnel during the March to the Polls.

13

**Answer:** These Graham Defendants object to this Request as overly broad and unduly burdensome. Furthermore, These Graham Defendants object to this Request because the terms "related to" and "their agents" and "any public official" are unclear and undefined since these terms can have a plethora of meanings. These Graham Defendants object to producing all email communications between or among Defendants. A search for *all* communications over the related time period resulted in over 100,000 results. To determine whether emails might "relate to" the October 31 event would require review of each email. These Graham Defendants object to reviewing all 100,000 emails as overly broad, unduly burdensome and not proportional to the needs of the case. The City of Graham instead conducted a keyword search as related to "March to the Polls" from City of Graham employees Cole, Flood, Velez, Sisk, Ben Edwards, Kirkman, Frankie Maness, and Jeffrey Prichard to email addresses ending in @alamance-nc.com. These Graham Defendants also located communications it knows pertained to the October 31 event, such as emails with Drumwright and Haddix as well as other parties. Subject to and without waiving its objections and limitations hereto, the City of Graham will produce these responsive, non-privileged documents in its possession, custody or control that it can locate. Defendant Cole has no documents in her individual capacity responsive to this request.

**Request for Production No. 4:** All documents related to the use of force (as set forth in definition #11 above), or authorizing the use of force, on any Participant in the March to the Polls, including but not limited to police reports and supplemental reports.

**Answer:** Subject to and without waiving its objections, to include its aforementioned objections regarding Plaintiffs' definition of "use of force," The City of Graham will produce responsive,

14

non-privileged documents in its possession, custody or control that it can locate. Defendant Cole has no documents in her individual capacity responsive to this request.

**Request for Production No. 5:** All recordings and/or photos, including but not limited to bodycam footage and/or audio, drone footage, and patrol car footage, press conferences or other statements to the public, related to or exhibiting the March to the Polls. In responding to this request, please provide a table or key showing the names of the officers or deputies responsible for recording the footage or taking the photos and their corresponding Bodycam Identification Code.

**Answer:** These Graham Defendants object to this Request as vague and ambiguous because the term "exhibiting the March to the Polls" is unclear, undefined and confusing. Subject to and without waiving its objections, The City of Graham will produce responsive, non-privileged recordings and/or photos in its possession, custody or control that that show the 10/31 event and that it can locate. All body worn camera videos are designed as CONFIDENTIAL pursuant to the protective order entered in this case. Defendant Cole has no documents in her individual capacity responsive to this request.

**Request for Production No. 6:** All documents pertaining to or referred to in your responses to Plaintiffs' First Requests for Admission and Plaintiffs' First Interrogatories.

**Answer:** These Graham Defendants object to this Request as vague, ambiguous, and overly broad because the term "all documents pertaining to" is unclear and undefined. Further, these Graham Defendants object to this Request because it has not received Requests for Admissions from Plaintiffs. Subject to such objections, documents identified in these Graham Defendants'

15

discovery responses will be produced to the extent they are in the possession of these Defendants. Defendant Cole has no documents in her individual capacity responsive to this request.

**Request for Production No. 7:** All documents and communications pertaining to demonstrations or protests in Graham, N.C., between April 1, 2020 and the present.

**Answer:** These Graham Defendants object to this Request as overly broad, unduly burdensome and includes documents and information that is neither relevant nor proportional to the needs of the case. Furthermore, these Graham Defendants object to this Request as outside the scope of the pleadings in this case, which regard only the 10/31 protest. These Graham Defendants object to this Request as vague and ambiguous because the phrase "pertaining to demonstrations or protests" is unclear and undefined, as the term "pertains" can have a plethora of meanings.

Initial search results related to this Request for Production, utilizing keyword search terms "protest*" and "demonstrate*" resulted in more than 17,000 emails. These Graham Defendants object to having to review and producing all 17,000 documents and communication as such information is overly broad and not relevant.

Subject to these objections, the City of Graham instead will attempt to locate and produce all nonprivileged email communications from GPD employees Cole, Maness, Sisk, Valez, and Flood identified with keyword search terms "protest*" and "demonstrate.*" Additionally, the City of Graham will attempt to locate and produce all nonprivileged documents it can locate with the terms "protest* or "demonstrat*" in the file name. Defendant Cole has no documents in her individual capacity responsive to this request.

16

Case 1:20-cv-00998-CCE-LPA Document 85-5 Filed 03/04/22 Page 17 of 19

This the 30th day of September 2021.

**Envisage Law**

By: <u>/s/ Anthony J. Biller</u>
Anthony J. Biller
NC State Bar No. 24,117
2601Oberlin Rd, STE 100
Raleigh, NC 27608
Telephone: (919) 414.0313
Facsimile: (919) 782.0452
Email: ajbiller@envisage.law

# CERTIFICATE OF SERVICE

A copy of the foregoing **City of Graham and Police Chief Kristy Cole's Responses to Plaintiffs' First Set of Requests for Interrogatories and Production of Documents** have been served by electronic mail on the following parties at the following addresses:

/s/ Elizabeth Haddix
Elizabeth Haddix
North Carolina Bar No. 25818
ehaddix@lawyerscommittee.org
LAWYERS COMMITTEE FOR CIVIL RIGHTS UNDER LAW
P.O. Box 956
Carrboro, NC 27510
Tel. 919-914-6106

Jennifer Nwachukwu
Maryland Bar No. 20869
jnwachukwu@lawyerscommittee.org
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, D.C. 20005
Tel. 202-662-8300

Kristi L. Graunke
North Carolina Bar No. 51216
kgraunke@acluofnc.org Jaclyn Maffetore
North Carolina Bar No. 50849
jmaffetore@acluofnc.org Daniel K. Siegel
North Carolina Bar No. 46397
dsiegel@acluofnc.org
ACLU of North Carolina
P. O. Box 28004
Raleigh, NC 27611-8004
Tel: 919-834-3466

Christopher Knight
CKnight@mayerbrown.com
Geoffrey Pipoly
GPipoly@mayerbrown.com

This the 30th day of September 2021.

**Envisage Law**

By: /s/ Anthony J. Biller
Anthony J. Biller
NC State Bar No. 24,117
2601 Oberlin Rd, STE 100
Raleigh, NC 27608
Telephone: (919) 414.0313
Facsimile: (919) 782.0452
Email: ajbiller@envisage.law
*Attorney for City of Graham, Kristy Cole Joaquin Velez, and Jonathan Franks*