# EXHIBIT 9

DRAFT

## Event

| | |
|---|---|
| **Type of Force Used::** | OC Spray, Empty Hand techniques |
| **Video Footage:** | Yes |
| **Photographs:** | No |
| **Officer Statements:** | Yes |
| **Suspect Statments:** | No |
| **Witness Statements:** | No |
| **Officer's Actions Within Policy:** | Yes |
| **Officer's Actions Justifiable under G.S.:** | Yes |
| **Policy Review Recommended:** | Yes |
| **Training Deficiency Identified:** | No |
| **Video Reviewed:** | Yes |
| **Video Flagged:** | Yes |
| **Internal Investigation Recommended:** | No |

## Narrative (1)

### Supervisor Comments

**VELEZ, JOAQUIN ANTONIO 5593** **11/13/2020**

Background:

On Saturday, October 31st, 2020, officers with the Graham Police Department were deployed in the area of Court Square in reference to a protest/ march called the "I am Change/ March to the Polls" organized by Rev. Gregory Drumwright and his organization, Justice 4 the Next Generation. The march from Wayman's Chapel AME Church to the area just north of the confederate monument at the Historic Courthouse in Court Square was concluded without incident. However after a pause in honor of George Floyd in the crosswalk of that area (Court Square and N Main Street), a large portion of the participants failed to leave the roadway after being ordered to do so by Graham Police officers on the scene. All officers present repeatedly gave commands and Graham Police Command (Lt. Flood) authorized the use of Mk9 OC Vapor to disperse the crowd from that location to the three designated protest areas for the group. Sgt. King and Ofc. Hopkins deployed their spray on the ground to disperse this group. Once the group moved out of the roadway and into the designated areas the rally continued for approximately an hour.

This is when Sgt. Kirkman noticed a subject carrying a gas can onto county property at the Historic Courthouse. I notified the Command Post to advise county units (Alamance County Sheriff's Office Deputies) who were in control of that area. Shortly thereafter (we later learned) deputies approached participants and advised them that they were seizing the gas can and that the generator they had needed to be removed from the property. The possession of these items was in violation of the permit agreement Drumwright had obtained through the ACSO for the rally portion of the event. Deputies


attempted to seize the generator when it was not removed and a physical altercation ensued between participants and deputies. Other deputies then deployed chemical agents to disperse the group and remove them from county property. As they exited the property Graham Officers directed them to the other two designated areas on the sidewalks at the northwest and northeast areas of Court Square.

During this time, while directing subjects across the street in the northwest area, Sgt. Way was assaulted by a Julius Walton (he shoved Sgt. Way by pushing him in the chest). Sgt. Way then attempted to take the subject into custody and he resisted, ripping Way's reflective vest and BWC from his person. Sgt. Way then took the subject to the ground and with the assistance of other officers was able to hand cuff him and complete the arrest. A female companion of Mr. Walton was also arrested when attempting to interfere with his arrest.

Shortly thereafter, Graham Command advised that the demonstration had been deemed an unlawful assembly and that all participants must disperse from the Court Square downtown area immediately. I retrieved my vehicle and utilizing the PA system addressed the crowd, ordering them to disperse. Sgt. Kirkman suggested a 5 minute countdown and I modified my instructions to the crowd. (The units to the east were unaware of this and proceeded to clear the smaller group of participants from their side. Sgt. King used the OC spray on the ground in two separate instances/ locations during this time.) Once the countdown was completed and final warning given by myself and Kirkman via PA, officers on the west side continued to give orders to disperse and used OC spray on the ground to disperse the crowd. Sgt. Kirkman, Sgt. Way, Cpl. Neudecker, and Officers Parks, Jordan, Boggs, and Hopkins deployed spray on this group.

The crowd eventually dispersed and once the area was clear of demonstrators the downtown area was reopened to the general public.

Review of BWC footage:

I reviewed the videos from officers' BWC's to investigate the individual uses of force. The videos corresponded to officers' statements in their individual use of force reports. (Parks, Jordan, Boggs, Kirkman, Hopkins, and Neudecker had one report each. Sgt. Way had two and Sgt. King had three.)

Primary notes of import viewed were the following:

During the first instance of spray the crowd started chanting "Whose Streets, Out Streets!" which has been common with protestors in the past. However after the order to clear the road was given a person on a megaphone/ bullhorn (likely Shon Green) the yelled "These streets belong to us!" The only issues of note were that Sgt. Kirkman had his camera muted for the final portion of the second spraying incident. However I was able to hear most of his speech during this time on other officers' videos. Also Ofc. Boggs did not have a recording on BWC at all. I utilized videos of other officers already mentioned plus Ofc. Land to view Ofc. Boggs' use of force.

Findings:

In reference to the force used by all officers, there was no indication that either physical force or chemical agents were used excessively. All officers' actions were in compliance with Graham Police

DRAFT

Department Policy 17: Use of Force and applicable state laws.

Sgt. Kirkman's mistake with the mute button was largely due to the fact he was acting as the co-Operations Chief on the ground along with myself. This required us to speak frequently with one another about tactics and then relay said information to junior officers. As this is outside the scope of his normal duties it is understandable. We have spoken about this and the matter is considered closed.

Most officers had multiple videos from the incident, where they recorded significant contact with participants and stopped it when talking with officers or not dealing with anyone in particular. Ofc. Boggs had no recording of this incident at all. This is a clear violation of Policy 71: Digital Audio/ Video Recording Systems; Section I, subsection B, paragraph 7 (m & p). This constitutes a violation of Policy 03: Rules of Conduct; Section 8; paragraph E. In reference to discipline I am recommending a documented (written) verbal reprimand pursuant to Policy 04: Internal Investigations; Section 4; subsections C (1) and subsection 5; line 8.

This matter is considered closed.

**Officer (1)**

| | | |
|---|---|---|
| **Reporting Officer:** | VELEZ, JOAQUIN ANTONIO (5593) | 11/05/2020 12:00:00 |
| **Officer(s) Involved:** | 8 officers involved, see narrative | |

DRAFT