IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:20-cv-00998-CCE-LPA

| | |
|---|---|
| JUSTICE FOR THE NEXT GENERATION, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>TERRY JOHNSON, individually and in his official capacity as Alamance County Sheriff*, et al.*,<br><br>*Defendants*. | **JOINT RULE 26(f) REPORT** |

1. **Rule 26(f) Meeting**

Pursuant to Fed. R. Civ. P. 26(f) and LR 16.1(b), counsel held a meeting on March 10, 2022 by video and telephone conference. The issues upon which the parties did not reach an agreement are set forth separately at section 8 below. The following counsel attended the conference:

    a. For all Plaintiffs, attorneys Maffetore, Medlock, and Nwachukwu;

    b. For all County Defendants, attorneys Hill and Gessner; and

    c. For all City Defendants, attorneys Biller and Ferlan.

2. **Procedural Posture and Case Schedule**

The parties previously submitted Rule 26(f) Reports on July 22, 2021. *See* Dkts. 32, 33. This Court adopted Plaintiffs' Rule 26(f) Report on August 25, 2021. *See* Aug. 25,

1

2021 Order. Under the current scheduling order, the parties shall complete discovery by July 25, 2022, and any dispositive motions are due on or before August 24, 2022. *Id.*

On January 31, 2022, Plaintiffs filed their Second Amended Complaint. *See* Dkt. 71. Among other things, the Second Amended Complaint added Corey Moore, Brenden Kee, and Jasmine Breeden as Plaintiffs and added Chad Martin, Daniel Nichols, James R. McClelland, Randy Denham, David Sykes, Chip Cobb, Peter Triolo, John Strickland, Mark Johnson, Jason Teague, Mark Dockery, Brandon Kilmer, Chandler Weger, James R. McVey, Taylor Hopkins, Duane Flood, Rodney King, Justin Hopkins, Noah Sakin, Scott Neudecker, Eric Jordan, Robert Parks, Joshua Payne, John Way, Keith Kirkman, Chad Boggs, Christopher Denny, and Brandon Land as Defendants (collectively, the "Newly-Added Parties"). Defendants' answer or Rule 12 motion is due on April 4, 2022. *See* Feb. 9, 2022 Order.

The parties submit this joint revised Rule 26(f) Report to clarify their positions with respect to discovery and scheduling with respect to this case in light of the Newly-Added Parties.

**3.** **Discovery Plan.** The parties jointly propose to the Court the following discovery plan:

- The Newly Added Parties shall serve their Fed. R. Civ. P. 26(a) initial disclosures and Plaintiffs shall supplement their initial disclosures regarding the Newly Added Parties (should they have supplemental information) by **April 18, 2022.**

2

- The Newly Added Parties shall serve their responses and objections to the previously-served common requests for production and interrogatories served in this litigation and produce responsive documents by **May 16, 2022.**

- Plaintiffs shall supplement their responses and objections regarding the Newly Added Parties to the previously-served common requests for production and interrogatories served in this litigation to answer regarding the Newly Added Parties and produce responsive documents by **May 16, 2022**.

- Except as to supplements of newly discovered documents pursuant to Fed. R. Civ. P. 26(e), the Newly Added Parties shall complete their document productions by **May 23, 2022.**

- The parties shall disclose their privilege logs on or before **May 30, 2022,** to disclose documents or information withheld on a claim of privilege or immunity from discovery, with the exception that communications between parties and their counsel of record, and communications between counsel of record need not be listed.

- Plaintiffs shall produce their expert reports under Fed. R. Civ. P. 26(a)(2) by **August 5, 2022**.

- Defendants shall produce their expert reports under Fed. R. Civ. P. 26(a)(2) by **September 23, 2022**.

- Plaintiffs shall produce any rebuttal expert report under Fed. R. Civ. P. 26(a)(2)(D)(ii) by **October 24, 2022.**

- Discovery completed by **December 1, 2022**.

- Dispositive motions filed by **January 6, 2023**.

**4. Limitations on party discovery.** The parties agree that the previously-ordered limitations on discovery requests shall apply to the Newly Added Parties as well.

**5. Possibility of Settlement (L.R. 16.1(b)(2)) and Timing of Mediation (L.R. 16.1(b)(4)).** The parties held a mediation with mediator Tom Duncan on March 2, 2022. The parties were not able to reach a settlement but have continued dialogue with and through Mr. Duncan regarding the same.

**6. Deposition Schedule (L.R. 16.1(b)(7)).** The parties anticipate fact witness depositions will start in late May 2022 after written discovery has been exchanged regarding the Newly Added Parties.

**7. Other Items.**

The parties agree that they may informally grant to one another extensions of time on deadlines stated herein without having to seek Court approval, **except** that the parties understand that they may not agree to alter the following without Court approval: the deadline for conclusion of discovery; the deadline to join parties and amend pleadings; and the deadlines for dispositive motions and responses/replies thereto.

With regard to identification and protection of privileged or trial preparation materials, the production of privileged or work-product protected documents, electronically stored information ("ESI") or information, whether inadvertent or otherwise,

is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding.

The parties agree that the previously-issued Protective Order, *see* Dkt. 36, Sept. 3, 2021 Order, applies to the Newly Added Parties as well.

Trial is expected to take approximately 20 days. Jury trial has been demanded.

**8.     Items where the parties did not reach agreement**

Plaintiffs propose that for each Newly Added Party, the disclosures called for by Fed. R. Civ. P. 26(a)(1)(A) shall be provided separately for each party. *See* Dkt. 83 at 16-17. Defendants propose the parties be allowed to serve consolidated R. 26(a)(1)(A) disclosures, with the exception that the newly added Plaintiffs should disclose their unique claims for damages under R. 26(a)(1)(A)(iii).

As explained in section 9 below, Plaintiffs proposed the following requirements, which Defendants do not agree to:

- The Newly Added Parties shall disclose the sources of information from which they plan to collect electronically stored information (e.g., email accounts, network shares, cell phones, social media, etc.) on **May 16, 2022.**

- The Newly Added Parties shall disclose any source of information that likely contains electronically stored information responsive to the previously-served requests for production that is no longer readily accessible and the reason(s) why that source is no longer readily accessible on **May 16, 2022.**

5

- The Newly Added Parties shall disclose any proposed search terms that they plan to utilize in order to search for responsive electronically stored information on **May 16, 2022.** Additionally, if a Newly Added Party proposes using a search methodology that does not include the use of search terms (e.g., technology-assisted review, linear document review, etc.), it shall disclose that methodology on **May 16, 2022.**

9. **Parties positions on areas of disagreement**

**Plaintiffs' Position on Proposed E-Discovery Disclosures:** Doubling down on their failure to provide complete initial disclosures and tell Plaintiffs when their document productions will be complete (*see* Dkt. 83), Defendants are refusing to provide any information to Plaintiffs regarding the custodians whose documents they plan to collect, how they plan to search through those documents for relevant materials, and whether there are any sources of relevant materials that have been lost or are inaccessible.

This is unacceptable. Federal Rules of Civil Procedure 26(f)(1) and 26(f)(3) require parties to discuss issues related to electronic discovery and the accessibility of electronically-stored information up front. *See* Fed. R. Civ. P. 26(f)(1), (3) (requiring parties to discuss "any issues about preserving discoverable information" and "any issues about disclosure, discovery, or preservation of electronically stored information."). Moreover, courts expect litigants to share basic information about custodians, search terms, and document preservation upon request. *See, e.g.*, *Burd v. Ford Motor Co.*, 2015 WL 4137915, at *8 (S.D. W.Va. 2015) ("The obligation on the parties to meet and confer early

in the case includes a 'discussion that can and should include cooperative planning, rather than unilateral decision-making, about matters such as "the sources of information to be preserved and searched; number and identities of custodians whose data will be preserved or collected . . .; topics for discovery; [and] search terms and methodologies to be employed to identify responsive data."'").[1]

This is not a hypothetical concern. Defendants have not represented that their document production is complete, nor have they produced documents that should exist,

---

[1] *See also HealthEdge Software, Inc. v. Sharp Health Plan*, 2021 WL 1821358, at *3 (D. Mass. 2021) (directing parties "to meet and confer to discuss custodians and search terms for ESI collection and review" and requiring defendant to "provide [plaintiff] with a proposed collection and search protocol"); *Salinas v. Cornwell Quality Tools Co.*, 2020 WL 8028616, at *6 (C.D. Cal. 2020) (ordering defendant "to explain to plaintiff in detail its ESI search methodology and document preservation efforts and protocols."); *Lawson v. Love's Travel Stops & Country Stores, Inc.*, 2019 WL 7102450, at *5 (M.D. Pa. 2019) ("the failure to engage in a collaborative search and sampling strategy can often yield discovery dysfunction."); *UnitedHealthcare of Fla., Inc. v. Am. Renal Assocs.*, 2017 WL 4785457, at *4 (S.D. Fla. 2017) ("Courts expect that counsel will endeavor to cooperate and reach agreements early in litigation regarding . . . the scope of search efforts (custodians, date ranges, sources) [and] the methods of search (keyword, TAR, combination)") (quotation marks and citation omitted); *Hatcher v. DeSoto Cty. Sch. Dist. Bd. of Educ.*, 2013 WL 12357529, at *2 (M.D. Fla. 2013) (requiring parties to meet and confer regarding the search terms that the defendant would use to search for relevant documents and requiring defendant to conduct supplemental searches for relevant documents); *Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc.*, 2011 WL 1002835, at *4 (E.D. Mich. 2011) (the party issuing a document request "is of course entitled to know what search criteria was used in retrieving relevant ESI."); *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 929 (N.D. Ill. 2010) (failure to "promptly disclose the list of employees or former employees whose emails [a party] proposed to search and the specific search terms it proposed to use for each individual violated the principles of an open, transparent discovery process."); *Romero*, 271 F.R.D. at 109-110 (compelling parties "to confer and come to some agreement on the search terms that Defendants intend to use, the custodians they intend to search, the date ranges for their new searches, and any other essential details about the search methodology they intend to implement for the production of electronically-stored information.").

7

such as records of investigations of officer conduct related to the October 31, 2020 March to the Polls, records of supplemental training caused by the October 31, 2020 March to the Polls, and recordings of police radio communications from October 31, 2020. Moreover, dozens of documents produced by the Graham Defendants come from the network path /Exchange/kcole@cityofgraham.com (Primary)/Recoverable Items/Deletions, suggesting that Defendant Cole may have deleted them. Without these disclosures, Plaintiffs do not know if these materials do not exist, existed but can no longer be found or accessed, or exist but were not found because Defendants did not conduct a sufficient search for them.

Contrary to Defendants' lengthy suggestion below, Plaintiffs are not asking for anything burdensome, disproportionate, or unfair. Defendants know whose documents they searched, how they searched, and whether there were documents that they could not search due to inaccessibility or deletion. All that Plaintiffs are asking for is for Defendants to put that information into an email and share it with Plaintiffs.[2]

Plaintiffs should not have to play Whack-a-Mole throughout discovery to chase down every gap in the Defendants' document production, nor should they be forced to spend time in a deposition trying to get this information. The "costs associated with adversarial conduct in pre-trial discovery have become a serious burden to the American judicial system," particularly in light of electronic discovery. The Sedona Conference, *The Sedona Conference Cooperation Proclamation* 1 (2008). "Cooperation in a transparent discovery process is the path to efficient, cost-effective litigation and achieves the purpose

---

[2] Plaintiffs are also happy to make the same disclosures.

of the federal discovery rules." *Burd*, 2015 WL 4137915, at *8. Indeed, "[t]he overriding theme of recent amendments to the discovery rules has been open and forthright sharing of information by all parties to a case with the aim of expediting case progress, minimizing burden and expense, and removing contentiousness as much as practicable." *Bd. of Regents of Univ. of Neb. v. BASF Corp.*, 2007 WL 3342423, at *5 (D. Neb. 2007); *see also Network Computing Servs. Corp. v. Cisco Sys., Inc.*, 223 F.R.D. 392, 395 (D.S.C. 2004) (discussing problems caused by the failure of counsel to approach discovery cooperatively and noting that "[t]he discovery beast has yet to be tamed.") (internal quotation marks omitted). That is all that Plaintiffs are asking for here. A modicum of cooperation on electronic discovery matters so that the parties can avoid extensive discussions regarding the sufficiency of Defendants' document productions and unnecessary motions practice before this Court.

**Defendants' Position on Proposed E-Discovery Disclosures:**

Defendants propose that no further changes be made to the parties discovery plan already entered by the court.

In July 2021, the parties met and conferred several times to reach an agreement regarding discovery, to include ESI protocols. After extensive discussions, the parties submitted separate reports, however, the parties had reached an agreement on everything, with the exception of limits on written discovery. The parties agreed on ESI protocols, which this Court subsequently adopted. (*See* D. _____.)

After Plaintiffs recently succeeded in adding over 30 new Defendants to the lawsuit, Plaintiffs propose that the "New Parties" only should be required to adhere to much more

9

strict and involved disclosures and proactive involvement with Plaintiffs regarding ESI protocols. Defendants disagree for four reasons.

First, this "late edition" of ESI requirements is completely asymmetrical and unfair. Regardless of what one thinks about applying such practices to complex commercial cases at the outset, applying them to this case at this time creates significant obligations on dozens of "new" Defendants with almost no obligation on Plaintiffs. As attorney Bornhorst attempted to say in a recent hearing before the Court, "what is good for the goose, ought to be good for the gander." This attempt to impose these obligations predominantly on one side over one year into the case should be rejected.

Second, Plaintiffs argue that these protocols are necessary to address Defendants' shortcomings in discovery. Despite displaying remarkable chutzpah in such an assertion, suffice it to say that the actual record in this case does not bear out Plaintiffs' primary argument. In support, Plaintiffs point only to their recently filed motion to compel Graham's discovery responses. Graham respectfully urges the Court to await Graham's forthcoming response regarding the same before accepting Plaintiffs' allegations against Graham. And even if Plaintiffs' discovery allegations against Graham were true (they are not), that would not justify imposing these additional obligations on the "new" Defendants, and certainly provides no basis for imposing them on the Alamance defendants.

Third, Defendants have concerns regarding requirements to proactively involve Plaintiffs with Defendants efforts and protocols for responding to Plaintiffs' discovery. Undersigned counsel take their professional obligations and their duties to this Court very

10

seriously, as well as their obligations to meet and confer with opposing counsel. Undersigned counsel has also spent *hours* in discussions with Plaintiffs over discovery issues and have found that the interactions have not improved case efficiencies. Perhaps that will change as Plaintiffs continue to rotate new attorneys into and out of the case; however, Graham's forthcoming response to Plaintiffs' motion to compel provides further insight into how well the parties' past discovery meet and confer efforts have progressed. Plaintiffs have not identified a tangible deficiency in Defendants' discovery responses that warrants a sweeping change to the parties' document retrieval and production systems. Defendants' disclosure of the information sought by Plaintiffs would only open the door for additional, unnecessary quibbling over the parties' respective methods of reaching the same result. Although Plaintiffs' proposed changes apply mutually to all "Newly Added Parties", Defendants disproportionately bear the additional expense.

Fourth and finally, Plaintiffs are incorrect that Courts expect parties to proactively engage these issues at the outset of discovery. Parties are not obligated at the outset of discovery to disclose the search terms used to retrieve ESI or the method used to locate documents responsive to discovery requests. Plaintiffs correctly point out that the Sedona Principles and Sedona Commentaries are persuasive authority on electronic document retrieval and production. *See Romero v. Allstate Ins.*, 271 F.R.D. 96, 106 (E.D. Pa. 2010). However, Plaintiffs overstate the instructions in these cases with respect to the parties' respective methodologies for complying with their discovery obligations. "Among the items about which the court expects counsel to 'reach a practical agreement' without the

11

court having to micro-manage e-discovery are 'search terms, date ranges, key players, and the like.'" *Id.* at 109 (quoting "Conducting E-Discovery after the Amendments: The Second Wave," 10 Sedona Conf. J. 215, 223 (2009). The parties are expected to confer and cooperate, but courts have generally only ordered parties to disclose search terms after discovering notable deficiencies in a party's compliance with the rules of discovery and apparent unwillingness to correct the error moving forward. *See*, *e.g.*, *Burd v. Ford Motor Co.*, 2015 WL 4137915, at *9 (S.D. W.Va. 2015) ("Ford has cloaked the circumstances surrounding its document search and retrieval in secrecy, leading to skepticism about the thoroughness and accuracy of that process.").

When two-way planning does not occur upfront and questions about the adequacy of the document production subsequently arise, common sense dictates that the party conducting the search must share information regarding the universe of potentially relevant documents being preserved, and those that no longer exist, as well as the search terms used in collecting the relevant documents and the identities of the custodians from whom the documents were retrieved. *Id.* at *8. Those circumstances are not present here.

In *Romero*, the Court confronted the plaintiffs' appeal to the Sedona Principles, Sedona Commentaries, and Sedona Conference Cooperation Proclamation in the plaintiffs' motion to compel following the defendant's failure to produce any documents in response to nearly half of the plaintiffs' discovery requests, boilerplate objections, and refusal to produce documents in native format with accompanying metadata. *Romero*, 271 F.R.D. at 101. The plaintiffs also sought to compel disclosure of the defendant's search methodology for

12

uncovering ESI in response to prior requests and moving forward. The defendant argued that production of metadata was contrary to the parties' original agreement on the format of discovery when the suit was initiated. However, the defendant failed to show that the parties' original agreement, from eight years prior to the motion to compel, applied to any discovery other than the already existing requests. The Court granted the plaintiffs' motion with respect to metadata and native documents for because the plaintiffs made new requests based on "substantial new developments" making the parties' prior "understanding" inapplicable. The motion was denied to the extent it sought to compel the defendant to duplicate prior requests under the new arrangement for the format of discovery. The Court also denied the motion to the extent it sought to compel disclosure of the defendant's prior search methodology and ruled that the parties must confer as to the new search methodology.

In *Burd*, the defendant represented to the plaintiffs and the court that it identified ten individuals with the most information on the two relevant topics for ESI searches and instructed those employees to conduct a "sweep" of the company servers for relevant and responsive documents. The parties never discussed or agreed on keywords and phrases for the searches. After accounting for overlap among the two groups/topics, only twelve people were identified, five of whom produced no documents, and the remaining seven produced only 150 documents. When the resulting document production was found to be woefully inadequate, the court ordered the parties to meet, confer, and agree on search terms. Multiple employees of the defendant who were tasked with conducting searches later

testified that they did not comply with the agreed-upon plan in searching for ESI, and another employee who allegedly uncovered no responsive documents was found to have authored and received hundreds of documents via review of other productions. The defendant blamed the issues on the plaintiffs' imprecise search terms yielding thousands of irrelevant documents in searches and the plaintiffs' unwillingness to change the search terms. However, the court found it obvious that the defendant was not forthcoming about the results of the searches, which hindered the progress of discovery. "Accordingly, the Court suggested some different strategies to move the e-discovery forward, including face-to-face discussions between the parties' IT experts about how to refine the search terms and phrases." *Id.* at *3. This method proved unfruitful. Only after these failures and the defendant's *continued* resistance to provide details regarding its searches in the face of its employees' testimony indicating the company was not complying with discovery obligations did the court order the defendant to produce a Rule 30(b)(6) witness to provide an overview of its claims investigation process, to testify regarding its document retention and destruction policies, and to supply details regarding the document search performed by the defendant.

In *Bd. of Regents of Univ. of Neb. v. BASF Corp.*, 2007 WL 3342423 (D.Neb. 2007), the defendant filed a motion to compel production of documents and for sanctions when, as a result of a previous order compelling production, the plaintiff produced some 1,700 pages of documents within the deadline set by the court and, in the final days of the discovery period, one day prior to a deposition of a key witness for the plaintiff, produced

14

over 11,000 pages of new documents that should have been produced pursuant to the court's first order. The court found that the plaintiff failed to comply with its obligations under Rule 26(a)(1), (2), and (3) to work with clients to make required disclosures, under Rule 26(b)(2) to reduce oppression and burden, under Rule 26(f) to cooperatively plan discovery with opposing counsel, under Rule 26(g) to certify accuracy and good faith in complying with discovery obligations, and under Rule 37(a)(2)(B) to confer with opposing counsel before filing motions. *Id.*, at \*5 ("The seriousness of counsel's failures . . . cannot be overstated."). In reviewing these violations, the court implied that the court places a degree of trust in the parties to comply with the rules of discovery in good faith and undertakes the paternalistic oversight measures sought by the Plaintiffs here (in *Drumwright*) only when a party shows that the opposing party has betrayed that trust. Even in *Bd. of Regents*, where the plaintiff made egregious violations of the rules of discovery, the court ordered the plaintiff to (1) conduct an exhaustive search of all files, document or data storage, and ESI, (2) certify under oath that the plaintiff complied with the court's order "stating in full the actions taken and by whom, and the number and nature of the documents covered by the order which have been found and produced, (3) and reproduce two witnesses for depositions at the plaintiff's expense. *Id.* at \*6-7. The court did not mandate disclosure of the search terms used.

In *UnitedHealthcare of Florida, Inc. v. American Renal Assocs., LLC*, 2017 WL 4785457 (S.D.Fla. 2017), the court reviewed the relevant authorities on e-discovery and still instructed the parties to "comply with what is ethically expected of them as

15

professionals and members of the Bar, and work together to refine the search terms and arrive at the production of relevant and proportional discovery in this case." At *4-5. "Plaintiffs have no legitimate basis for assuming, and encouraging the Court to infer or find, that there are more such withheld documents by Defendants. Defendants' counsel, who are officers of the court, have represented that no additional non-privileged, responsive documents are being withheld. In effect, and to be blunt, Plaintiffs' counsel are effectively accusing Defendants' counsel of lying to the Court." *Id.*, at *5. The *UnitedHealthcare* court's holding further supports the principle relied on by other courts based on the Sedona Conference Institute that the parties must cooperate to conduct e-discovery, including the development of search terms for retrieving and producing ESI. Disclosure of search terms is only mandated after a showing that one party's then current methods are inadequate, unless otherwise agreed by the parties.

Here, the cases cited by Plaintiffs do not support a conclusion that parties are required to make such disclosures at the outset of discovery. Each case indicates some deficiency in the offending party's production warranting additional examination of the party's method for retrieving and producing documents. Plaintiffs have not shown that some aspect of Defendants' e-discovery methodology is fundamentally flawed warranting a change, and disclosure of that change, with the introduction of 35 new Defendants.

Respectfully submitted this 17th day of March, 2022

| | |
|---|---|
| */s/ Elizabeth Haddix* | */s/Jaclyn Maffetore* |
| Elizabeth Haddix | Kristi L. Graunke |
| North Carolina Bar No. 25818 | North Carolina Bar No. 51216 |

16

ehaddix@lawyerscommittee.org
Lawyers' Committee for Civil Rights
Under Law
P.O. Box 956
Carrboro, NC 27510
Tel. 919-914-6106

*/s/ Jennifer Nwachukwu*
Jennifer Nwachukwu*
Maryland Bar No. 20869
jnwachukwu@lawyerscommittee.org
Lawyers' Committee for Civil Rights
Under Law
1500 K Street NW, Suite 900
Washington, D.C. 20005
Tel. 202-662-8300

*/s/ Jason L. Keith*
Jason L. Keith
North Carolina Bar No:34038
Keith & Associates, PLLC
241 Summit Avenue,
Greensboro, NC 27401

kgraunke@acluofnc.org
Jaclyn Maffetore
North Carolina Bar No. 50849
jmaffetore@acluofnc.org
Daniel K. Siegel
North Carolina Bar No. 46397
dsiegel@acluofnc.org
ACLU of North Carolina
P. O. Box 28004
Raleigh, NC 27611-8004
Tel: 919-834-3466

*/s/ Stephen M. Medlock*
Michael Bornhorst*
Geoffrey Pipoly*
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL 60606
(312) 701-7155
mbornhorst@mayerbrown.com
gpipoly@mayerbrown.com

Kfir. B. Levy*
Stephen M. Medlock*
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
(202) 263-3000
klevy@mayerbrown.com
smedlock@mayerbrown.com

*Counsel for Plaintiffs*

*\* By Special Appearance*

**Envisage Law**

By:     */s/ Anthony J. Biller*

17

Case 1:20-cv-00998-CCE-LPA   Document 92   Filed 03/17/22   Page 17 of 19

Anthony J. Biller
NC State Bar No. 24,117
Adam P. Banks
NC State Bar No. 47,559
2601 Oberlin Rd, STE 100
Raleigh, NC 27608
Telephone: (919) 414.0313
Facsimile: (919) 782.0452
Email: ajbiller@envisage.law
Email: abanks@envisage.law

*Attorneys for the Graham Defendants*


**Hall Booth Smith, P.C.**

By:     */s/ Scott MacLatchie*
Scott MacLatchie
North Carolina Bar No. 22824
Christian Ferlan
North Carolina Bar No. 53459
Hall Booth Smith, P.C.
11215 North Community House Road
Suite 750
Charlotte, North Carolina 28277
Telephone No. (980) 949-7822
smaclatchie@hallboothsmith.com
cferlan@hallboothsmith.com

*Co-counsel for Defendants Mary Christine Cole, Joaquin Velez and Jonathan Franks*

**Cranfill Sumner LLP**

By:     */s/ Paul G. Gessner*
Paul G. Gessner
NC Bar No. 18213
P.O. Box 27808
Raleigh, NC 27607
Telephone (919) 863-8734
Facsimile (919) 863-3477
Pgessner@cshlaw.com

*Attorney for Terry Johnson and Cliff Parker.*


**Frazier, Hill & Fury, R.L.L.P.**

By:  */s/ William L. Hill*
William L. Hill
NC Bar No. 21095
2307 W. Cone Boulevard, STE 260
P.O. Box 1559
Greensboro, NC 27401
Telephone (336) 378-9411
Facsimile (336) 274-7358
whill@frazierlawnc.com

*Attorneys for Terry Johnson and Cliff Parker*