# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GREGORY DRUMWRIGHT, *et al*.,

*Plaintiffs,*

v.

TERRY JOHNSON, individually and in his official capacity as Alamance County Sheriff, *et al*.,

*Defendants*

1:20-CV-00998

## THE CITY OF GRAHAM'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL [D. 82]

A characteristic of a motion or a claim that never should have been brought is that granting the relief requested would not change anything. In a case that has already become an exemplar of bloated claims and inefficiency, Plaintiffs have done precisely what this Court warned them not to do: bring a retaliatory motion to compel that lacks merit. Granting the relief they request would not lead to the production of new evidence or answers from Graham. Adding literal insult to injury, on top of the lack of merit, Plaintiffs gratuitously attempted to embarrass and insult The City of Graham ("Graham") and certain of its officers with factual allegations in this public filing, where the accusations have nothing whatsoever to do with the issues presented in their motion. Worse yet, these gratuitous insults are rife with falsehoods. Such misconduct is

1

unacceptable coming from any litigant. It is particularly disappointing coming from an international law firm and national civil rights law firms, particularly where they have already been warned about their prior misconduct in discovery. Instead, the nonsense continues. The fact that they are behaving this way against a small municipality and decent, blue collar law enforcement officers only heightens the need to hold Plaintiffs accountable for their ongoing misconduct.

## I. FACTS

*Discovery Negotiations*

Graham served its discovery responses on September 30, 2021. (D. 85-5) On October 7, 2021, Plaintiffs' wrote Defendants regarding concerns they had regarding Graham's responses. (D. 93-2) On October 14, 2021, Graham responded, raising concerns with Plaintiffs' responses and agreeing to meet and confer on October 19 regarding the discovery issues raised in the letters. The parties then engaged in an extended meet and confer regarding their respective concerns, discussing them in detail for at least two hours. Elizabeth Haddix led the discussions and communications for Plaintiff. Attorney Michael Bornhorst, who filed the supporting declaration for Plaintiffs' motion (D. 85) did not participate; in fact, he had not yet even entered an appearance in the lawsuit. As will be discussed below, Plaintiffs' motion to compel, attempts in part to rehash issues that were resolved between the parties as of October 19, 2021.

After the meet and confer, on October 23, Ms. Haddix wrote a letter commemorating from her perspective the issues she believed were still "open" with

2

regard to Graham's responses. (D. 85-6) It warrants comparing where Plaintiffs were on these discovery issues then, versus what Plaintiffs argue now. Graham also subsequently supplemented its Rule 34 written responses to do a better job of explicating some of Graham's objections and how Graham responded to the requests. (D. 93-1).

A few things relevant to Plaintiffs' motion happened between Haddix's October 23, 2021 letter, and Plaintiffs' motion filed 133 days later. Foremost, the Court granted Defendants' motion to compel and sanctioned Plaintiffs for their discovery misconduct. In the course of those hearings, on January 27, 2022, attorney Bornhorst warned the Court that entering sanctions against Plaintiffs would incentivize follow-on motions to compel, to which the Court responded unequivocally that Plaintiffs should not engage in a retaliatory response. (D. 79-1, at 83). In discussing the Rule 37 sanctions issued by the Court, and upheld by Judge Eagles on review (D. 91), on February 7, 2022, Plaintiffs wrote Defendants, in part, complaining of "duplicative work . . . for seven different attorneys" in connection with Defendants' Motion to Compel. Ironically, as explained herein, Plaintiffs' motion to compel rests on issues with their own counsels' duplication of work and rehashing resolved issues, which, in turn, has forced Defendants to duplicate work to get Plaintiffs' substituted attorneys up to speed.

On February 21, 2022, the week before mediation, Ms. Haddix sent a 15 page discovery dispute letter to Defendants laying out numerous complaints regarding

discovery.[1] A select few of the issues were legitimate – technical issues the parties had been discussing regarding ESI and metadata and a few issues that were new to Graham; however, several issues were simply errant.[2] In response to the letter,[3] Defendants and Plaintiffs conducted an approximately 90 minute meet and confer on February 25, with Bornhorst leading the discussion for Plaintiffs. Biller again was lead counsel for Graham. Several of the issues presented by Bornhorst had been previously discussed and resolved during the parties October 19, 2021 conference. The February 25 meet and confer included detailed discussion of Plaintiffs' February 21, 2022 discovery letter (D. 86-2) and Defendants' February 21 spoliation letter. (D. 93-4). Upon conclusion of that meeting, undersigned counsel thought Plaintiffs' discovery concerns had again been resolved.

On March 2, 2022, the parties conducted a mediated settlement conference. Unlike Graham's mediation with the parallel *Allen* Plaintiffs, this mediation was a failure. Two

---

[1] Ms. Haddix's lengthy letter was one of several attachments to an email she sent. One of the attachments was a discovery scheduling request to the "New Defendants" wherein Plaintiffs requested the 31 new Defendants produce their initial disclosures by March 11, 2022, and serve their written responses to Plaintiffs' prior discovery requests by March 29, 2022. Her email also included a notice of deposition, noticing depositions for 31 Defendants, with defendants noticed on nearly every consecutive business day from March 24 through to June 9. Ms. Haddix also included a proposed seven-page protocol for conducting depositions. Perhaps mistakenly, given what appeared to be several absurd propositions, undersigned counsel viewed much of this as pre-mediation posturing.
[2] For example, Ms. Haddix asserted that verifications had not been served when they had been served months earlier and requested email search queries that were narrower than the search queries Graham used and disclosed in its written responses.(D. 93, ¶¶ 6, 26).
[3] Unbeknownst to Plaintiffs, in the early morning hours of February 22, before even reading Haddix's letter, undersigned counsel. Biller, while traveling out of state, was admitted to a hospital for emergency medical issues. He was released February 23 and was not able to review and begin responding to the letter until returning to the office February 24.

4

days later, Plaintiffs' filed this motion to compel.

*Counter-statement of Facts*

Very little of Plaintiffs' "Statement of Facts" is relevant to the alleged discovery dispute. The first paragraph of Plaintiffs' statement of facts accuses of Graham Officers Sakin and Neudecker of deploying OC vapor after Officer King to clear protestors out of NC State Highway 87. In fact, Neudecker did not deploy OC vapor after King to clear protestors out of the highway, and Sakin never deployed OC vapor at all that day.[4] Plaintiffs accuse Neudecker of "encouraging" King, "Hit 'em again!" Again, that is simply false and a slipshod recitation of the facts for the purpose of embarrassing these officers in a public filing. King deployed OC vapor at the ground a second time when several protesters defied orders to leave Highway 87 and defiantly remained in the roadway after the first deployment of OC vapor, staring down the officers that repeatedly ordered them to get out of the road.

It takes Plaintiffs several pages to get to facts relevant to the motion. On page 4, Plaintiffs finally state Graham "admitted that their document production is not complete and they are still collecting responsive materials." (D. 83, at 8) Yet, that is at best a half-truth. On February 25, Graham produced all of the documents they had to supplement, responsive to Plaintiffs' letter, with two exceptions that the parties discussed that day.

---

[4] While Neudecker did deploy OC vaper at the pavement after the protest was declared unlawful later in the day, Plaintiffs' gratuitous smear against Sakin is harder to understand. Graham listed for Plaintiffs the officers who deployed OC vaper on October 31, and Sakin was not one of them. *See* D. 85-5, pp. 10 – 12.)

5

Undersigned counsel explained that prior to Haddix's letter, undersigned believed all responsive documents had already been produced. In their February 21 letter, Plaintiffs notified undersigned counsel that the Graham Police Department had used Facebook messaging to respond to Facebook messages regarding the October 31 protest.

By the February 25 meet and confer, undersigned counsel had confirmed and told Plaintiffs that GPD had received and responded to Facebook messages regarding the protest, that GPD was reviewing the same, and that notwithstanding the tenuous relevance, the messages would be produced as soon as they could be extracted. Undersigned anticipated having them produced within one week, i.e. by March 4, and expressed the same to Plaintiffs' counsel.

The only other production issue was one the parties had previously discussed. In an effort to de-duplicate documents, Graham removed documents from production that were being produced dozens of times. An unintended consequence of that was documents attached to emails forwarded to numerous email addresses were removed from their native emails. For example, hypothetically, if Captain Velez emailed the October 31 safety plan to ten recipients, Graham did not produce eleven copies of the safety plan. What this led to, under this hypothetical, was the metadata for the ten recipients (assuming all GPD) did not "point" to the safety plan file. Plaintiffs raised this as an issue and, at the parties February 25 meet and confer, undersigned counsel presented Plaintiffs with two options: Graham could either reproduce all of the affected emails, including the previously "missing" attachments, or Graham could produce just the "missing"

6

attachments with a load file that "pointed" to each attachment's parent email that Graham had previously produced. Bornhorst said that he would confer with his team and revert back with what Plaitniffs wanted. Instead, Plaintiffs filed a motion to compel on March 4. Having not received a response from Plaintiffs regarding the sought attachments, on March 10 undersigned followed up with Bornhorst regarding which option Plaintiffs' wanted. Another attorney, newly introduced to the case for Plaintiffs, responded to undersigned that the Plaintiffs preferred a replacement load file and production of just the attachments. The missing attachments were produced the next day.

To Graham Defendants' knowledge, the Graham Defendants have nothing further to produce. The above were the meritable issues raised in Haddix's February 21 letter, and there was no dispute between Plaintiffs and Graham regarding these issues prior to March 4.

## II. ARGUMENT

Plaintiffs moved to compel the discovery responses of the City of Graham, Graham's police chief Kristi Cole, Officer Joaquin Velez and Jonathon Franks. In their filings, however, they only attached the discovery response of the City of Graham and Chief Cole. They did not attach the responses of Velez, Franks, or of Chief Cole in her individual capacity. Further, Plaintiffs' arguments only reflect issues they take from Graham's responses. Given Plaintiffs' failure to provide copies of or arguments regarding the individual responses of Cole, Velez and Franks, Plaintiffs' argument should be treated as abandoned and their motion denied as to those parties.

7

Responding seriatim to Plaintiffs' arguments:

**A.** **The Graham Defendants produced their responsive documents.**

First, undersigned repeatedly told counsel for Plaintiffs that other than the aforementioned issues, Graham's discovery productions were complete. Undersigned counsel specifically discussed with Bornhorst on February 25, 2022, that Graham had produced all of the documents regarding internal investigations concerning the events of October 31 and would supplement with one additional document immediately following the meet and confer. Bornhorst responded that he thought there should be more. He was told there were not any other documents and none were being withheld. Plaintiffs moved to compel anyway.

Second, Plaintiffs simply assert that Graham has not produced training documents reflective of the training discussed in the October 31 after action reports. Plaintiffs play fast and loose not just with the background facts, but even with their own requests. Plaintiffs do not refer the Court to the discovery request corresponding to this alleged shortcoming, and for good reason. Plaintiffs' discovery request regarding training is expressly limited to training that occurred "between April 1, 2020 and October 31, 2020 … ." (D. 85-3, at 8 (interrogatory number 6).) Again, this was pointed out to Bornhorst in the parties' February 25 meet and confer. (D. 93, ¶ 22). Undersigned told Bornhorst that if Plaintiffs wanted discovery beyond the scope of their current request, they should issue

a new request.[5] Nonetheless, Plaintiffs still moved to compel for information that is unquestionably outside the scope of their request, even after undersigned counsel pointed that out to them.

Third, Plaintiffs moved to compel Graham's production of personal device messages and argue Graham has not produced messages sent and received from Graham's Facebook account regarding the October 31 protest. Plaintiffs argue that Graham has not produced any text messages. That is simply untrue. Undersigned counsel told Bornhorst during their February 25 teleconference that Graham had a handful of print outs of texts from Cole's City owned mobile device. Prior to Haddix's February 21 letter, undersigned counsel thought those texts messages had been produced months ago, but after receiving the letter, discovered that the texts were not produced, an apparent oversight in the mechanics of selecting thousands of files from tens of thousands of ESI files for production. Those copies of Cole's texts were produced to Plaintiffs that same day, February 25, well prior to the motion to compel.

Plaintiffs also complain about messages sent and received from third parties on Facebook not being produced. Arguably, the only request these third party communications might fall under are Plaintiffs' document request number 3, an omnibus request for "All other documents related to the March to the Polls, including but not limited to … ." Graham objected to this request as being overly broad. (D. 85-5, at 14 –

---

[5] Graham is not advocating for such a request since post-October 31 training is irrelevant to the claims sub judice.

15.) It is also far from clear how Facebook messages with third parties have any relevance to the issues in dispute. Nonetheless, in an apparently failed effort to avoid a pointless dispute, Graham agreed to produce the third party Facebook messages and specifically told Bornhorst that the plan was to get those messages extracted and produced by the next week. Undersigned counsel has since produced them. Instead of waiting for those messages, Plaintiffs moved to compel.

Plaintiffs' "final" argument is particularly aggravating. Plaintiffs complain that some email files are missing metadata fields, and they file one exemplar at docket 85-15. Undersigned counsel told Bornhorst in no uncertain terms that for files where metadata is missing, there is a simple reason – the native file did not have the missing metadata. For the particular exemplar filed at docket 85-15, **it is a draft email that was never sent** – so there is no recipient metadata. Undersigned counsel believes this topic was discussed with Haddix on October 14, 2021; it was most certainly discussed with Bornhorst on February 25. Graham's email search was so extensive it retrieved deleted drafts that were never sent. Like Graham's production of internal investigations, Graham produced all of the responsive, discoverable metadata. Plaintiffs think that there "should be more," so, despite undersigned counsel's repeated assurances and representations, Plaintiffs moved to compel. The appropriate "final" for Plaintiffs' argument is that this should be the "final" nail in their coffin for sanctioning Plaintiffs for this wasteful and utterly

thoughtless motion.[6] Further, at the same time Plaintiffs accuse Graham of metadata misdeeds, their own metadata house is certainly not in order. (D.93,¶ 35).

### B.     The Graham Defendants provided complete interrogatory responses.

Plaintiffs first impugn Graham's general objections. During the parties' October 19, 2021 meet and confer, undersigned discussed this at length with Haddix. There were two conclusions drawn. First, Defendants stood by their objections regarding Plaintiffs' "use of force" definition. Plaintiffs' definition referenced an obscure third-party publication that Plaintiff did not produce to Defendants, which elicited the general objection regarding that definition. Defendants agreed to revisit the objection if Plaintiffs produced a copy of the treatise to Defendants for review. Plaintiffs did not do so. The second conclusion was that, as noted in the specific responses, Defendants were not withholding responsive documents or information based on the general objections, other than communications and work product between parties and attorneys of record. Plaintiffs seemed satisfied with that response then. (*See* D. 85-6 (not raised as an issue).) Several months later, Bornhorst appeared in the case and re-raised the issue. On February

---

[6] Plaintiffs final argument that metadata may have been lost because the deleted, unsent draft email was extracted from a "Discovery/Hold" folder reflects Plaintiffs failure to understand basic litigation hold functions. Plaintiffs are referencing information from the "mailbox path" metadata field that is generated from all Microsoft Exchange PST files. The mailbox path is not a required metadata field per the parties ESI agreement and order, nonetheless, Graham included it in its metadata. (D. 33, pp. 13-14). Counsel for Plaintiffs apparently do not understand how Microsoft Exchange works for Litigation holds.  Microsoft created documentation on how "Recoverable Items" folders work.  *See* https://docs.microsoft.com/en-us/exchange/security-and-compliance/recoverable-items-folder/recoverable-items-folder. The Recoverable Items folder catches deleted emails that meet a certain criterion, such as specific terms.  GPD0013020 was never sent. The draft was deleted, and the Exchange "hold" protocols captured it and it was subsequently produced.

25, undersigned counsel again explained, this time to Bornhorst, that Defendants were not withholding evidence based on general objections. Again, the parties moved on with the discussion without argumentation, until Plaintiffs filed this motion. There is nothing to compel.

Plaintiffs next take issue with Graham's response to interrogatory number 2, where Plaintiffs asked who was "involved and/or consulted in the creation" of the safety plan for October 31. Graham listed six individuals. (D. 85-5, p. 8). Again, Biller and Haddix discussed this interrogatory during their October 2021 meet and confer. Haddix asked what Graham meant by disclosing the "primary" individuals involved with the plan. Undersigned explained that these were the people who had substantive input and approval over the plan, i.e. the people responsible for it. Graham did not try to determine whether or to what extent someone may have contributed administrative assistance in copying or editing the draft plan but limited the response to the people responsible for substantively forming it. Again, Plaintiffs appeared satisfied with this explanation. (*See* D. 85-6 (not raised as an issue). This was re-explained to Plaintiffs on February 25. Graham is not aware of anyone else who contributed material input or had approval authority over the safety plan.[7] The interrogatory response was complete when the parties

---

[7] Undersigned explained to Haddix in October 2021, that these answers were made in good faith upon diligent efforts. Contemporaneous recordings logs of who talked to whom were not being kept regarding the details Plaintiffs request in discovery. While Graham put meaningful effort in planning and preparing for October 31, there have been over 100 protests in downtown Graham since the death of George Floyd, in addition to the normal law enforcement activities of a municipality.

12

discussed this last October. It was complete when the parties discussed this February 25, and it was complete when Plaintiffs filed their motion to compel.

Plaintiffs' arguments regarding Graham's response to interrogatory number 3 is even less availing. Yet again, this precise issue was discussed to apparent resolution with Plaintiffs in October 2021, only to be recently resurrected. (*See* D. 85-6 (not raised as an issue).) In both meet and confers with Plaintiffs, undersigned counsel explained and re-explained first to Haddix, then Bornhorst, that the "Unified Command" did not mean that there was one command entity for all personnel on October 31. There was no sharing of personnel or command authority between Alamance County and the City of Graham. The two government authorities simply co-located their event leadership in a single command center location, referred to as "Unified Command." Plaintiffs argue that they disagree with Graham's answer. Frankly, their disagreements are factually misplaced. Like Graham's production of internal investigation reports and metadata, disagreeing with the substance of a response is not a basis for compelling a further response that Plaintiffs prefer. The argument itself is sanctionably frivolous.

Plaintiffs' arguments regarding interrogatory number 6 is disingenuous. The identification of documents responsive to this interrogatory has never been in dispute. It was overlooked by both Graham and Plaintiffs for months, until just recently. Graham produced its written responses prior to completing its document review and production, so Graham did not have the production numbers to reference in the written responses. Graham simply forgot to write Plaintiffs with the relevant production numbers for this

interrogatory until Plaintiffs February 21 letter. During the parties' February 25 meet and confer, undersigned counsel told Plaintiffs the information would be provided. In response, Plaintiffs moved to compel the information.[8]

Plaintiffs' arguments regarding interrogatory number 7 are like Plaintiffs' arguments regarding interrogatory number 3: Plaintiffs do not argue information is being withheld, they do not like the fact the response lists the police officers assaulted during the October 31 demonstration, as that does not comport with Plaintiffs' case narrative. Like Interrogatory number 3, this interrogatory was also not an issue in October 2021 after the parties' meet and conferred. (*See* D. 85-6 (not raised as an issue).) Further, the right against being physically assaulted may, reasonably, be regarded as a type of intangible property right. Plaintiffs may disagree, but that is not a basis for compelling a different response.

### C. Grahams' initial disclosures are complete and there was no meet and confer on this issue.

On August 16, 2021, the Graham Defendants produced a consolidated Rule 26(a)(1) report where they disclosed the requisite information. Notwithstanding many hours, letters, and emails between the parties regarding discovery, it was not until February 1, 2022, 189 days later, at the end of a 15 page discovery demand letter, that Plaintiffs requested each Defendant to produce separate initial disclosures of witnesses

---

[8] Training Docs Production Numbers: GPD 0011206-0011271; GPD0011273-001355, GPD 0011580; GPD 0011581-0011653; GPD 0011684; GPD 0011685-0011686; GDP 0011687; GPD 0011688-0011689; GDP 0011690; GDP 0011691; GDP 0011692; GDP 0011694-0011898; GDP 0012007-0012031; GDP 0012032-12060; GDP 0012061-12083; GDP 0012084-0012106

that each particular Defendant may rely upon. It was such a non-issue for the prior 193 days, that when undersigned counsel and Bornhorst discussed the discovery disputes on February 25, it was not discussed. (D. 93 ¶ 31). At least undersigned counsel have no recollection of discussing initial disclosures with Bornhorst. At the end of the February 25 conference, Biller concluded by asking to the effect, "is there anything else we need to cover before concluding?" Everyone agreed, the parties had discussed everything at issue. Regardless, Rule 26(a)(1) does not prohibit parties who are joined as plaintiffs or defendants in a lawsuit from producing joint initial disclosures. In fact, Plaintiffs had done precisely the same thing, until the Court *sua sponte* ordered Plaintiffs to produce independent responses as part of the Court's remedy addressing Plaintiffs' repeated failures to properly respond to Defendants' interrogatories. The Court has not entered such an order against Graham, nor is one necessary as Graham has responded fully, or at least in good faith believing it has properly and fully responded. Plaintiffs cite no authority for the relief they request.[9]

### D. Plaintiffs and their attorneys should pay for Graham's costs associated with the defense of this motion.

The "great operative principle of Rule 37 is that the loser pays." *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 244 (M.D.N.C. 2010) (citing *Biovail Corp. v.*

---

[9] The case Plaintiffs cites, *Randolph v. PowerComm Const., Inc.*, 309 F.R.D. 349, 362 (D. Md. 2015), holds that claimants will not be dismissed at summary judgment for failure to disclose their Rule 26(a)(1)(A)(iii) claim of damages, where the claimants disclosed their damages claims in response to interrogatories. The holding and language of the case is inapplicable to the relief Plaintiffs request.

15

*Mylan Labs., Inc.*, 217 F.R.D. 380, 382 (N.D.W.Va.2003). This principle applies to the party making a motion to compel, as well as to the party opposing a motion to compel. Pursuant to Rule 37, if a motion to compel is denied, the Court is required to do the following:

> after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(a)(5)(B). *See also*, *e.g.*, *Hare v. Comcast Cable Commc'n Mgmt., LLC*, 564 Fed.Appx. 23, 25 (4th Cir. 2014) (denying Plaintiff's motion to compel discovery and awarding Defendant's fees and costs for defense of the motion); *Patrick v. Teays Valley Trustees*, LLC, 297 F.R.D. 248, 267–68 (N.D.W. Va. 2013), *aff'd sub nom.* *Patrick v. PHH Mortgage Corp.*, 298 F.R.D. 333 (N.D.W. Va. 2014) (awarding attorneys' fees to Plaintiff associated with Defendant's denied motion to compel.); *CoStar Realty Info., Inc. v. Field*, 737 F. Supp. 2d 496, 516 (D. Md. 2010) (awarding "attorney's fees for prevailing in its opposition to the Plaintiffs' Motion to Compel" and motion to compel filed after close of discovery not justified); *Channing v. Equifax, Inc.*, No. 5:11-CV-00293-FL 2012 WL 1204900, at *3 (E.D.N.C. Apr. 11, 2012) (awarding Defendant's attorneys' fees and expenses following the denial of Plaintiff's motions to compel as "baseless attacks against counsel that do not appear supported by the record" and "attempt to litigate the merits of the case"); *Chambers v. N.C. Dep't of Juvenile Justice and Delinquency Prot.*, No. 1:10-cv-315, 2013 WL 3776498, at *4 (M.D.N.C.

July 17, 2013) (denying Plaintiff's motion to compel discovery responses based on Defendant's provision of sufficient discovery responses and awarding Defendant the option to pursue costs and fees incurred in defending the motion); *Unilectric, Inc. v. Holwin Corp.*, 243 F.2d 393 (7th Cir. 1957), cert. denied, 355 U.S. 830, 78 S. Ct. 42, 2 L. Ed. 2d 42 (1957) (finding no substantial justification for seeking order to compel answers to questions, and moving party was required to pay costs and attorney's fees.).

Making a motion to compel, or opposing the same is substantially justified "if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule." 8A Charles A. Wright, Arthur R. Miller, Richard L. Marcus, Federal Practice and Procedure § 2288 (Civil 2d ed. 1994). However, courts have recognized that a moving party's ability to seek recovery of costs and attorneys' fees is automatically curtailed by the moving party's failure to make a good faith effort to resolve the discovery dispute without filing a motion. *Coleman on behalf of N.C. v. Wake Cty. Bd. of Educ.,* No. 5:17-CV-00295-FL, 2019 WL 2932740, at *2 (E.D.N.C. July 8, 2019) ("Although there is no definition of what constitutes a good-faith effort to meet and confer, it is characterized as a meaningful opportunity to resolve ... dispute[s] without court intervention."); *Kemp v. Harris*, 263 F.R.D. 293 (D. Md. 2009) (finding lack of good faith effort to resolve when counsel for moving party disregarded opposing counsel's response and filed motion to compel the next day).

Plaintiffs' motion to compel should be denied and Plaintiffs should be ordered to pay Graham's costs of defending the motion because Plaintiffs' motion was not

substantially justified. First, Plaintiffs' issues raised in their motion are not meritable. Plaintiffs would get no new information were the Court to grant their motion. The only point of disagreement between the parties after the meet and confer, was the Plaintiffs did not like Graham's answers to interrogatory numbers 3 and 7. Undersigned counsel did not believe, and still does not, that disagreeing with the substance of a response establishes grounds for moving to compel. Regardless, there was no reasonable basis for Plaintiffs to file this motion to compel and impose further discovery costs on a small municipality and its police officers.

Second, the timing of Plaintiffs' motion to compel is highly suspect and supports the conclusion that this motion was not brought in good faith. From October 19, 2021 through to February 21, 2022, there was no ongoing dispute regarding Graham's responses to Plaintiffs' discovery requests. Then a few things occurred in the recent past that changed how Plaintiffs viewed discovery. On January 27, 2022, Judge Auld forecast he would order Plaintiffs to pay Defendants' costs associated with Plaintiffs' egregious discovery misconduct. In direct response, attorney Bornhorst warned Judge Auld that "both sides" would come to the Court with future discovery disputes if there was cost shifting; Judge Auld cautioned against retaliatory filings. (D. 79-1, p. 83.) On February 2, 2022, Judge Auld entered an order compelling Plaintiffs to pay the costs associated with their discovery misconduct. Nineteen days later, on February 21, Haddix delivered a 15 page discovery demand letter. For most of the issues set forth in Plaintiffs' motion, there

18

was a pattern – they were not an issue in Haddix's October 23, 2021 letter, and did not become an issue until after this Court sanctioned Plaintiffs.

That is not, however, the only objective evidence that Plaintiffs did not bring this motion in good faith. There is simply no meritable explanation for Plaintiffs inclusion of the accusations regarding Graham's alleged conduct on October 31 as part of this motion to compel. Plaintiffs argumentative statement of facts had nothing to do with this motion, and the Court's familiarity with the suit disposes of any perceived need to "lay the groundwork" for the Court's review. Plaintiffs' allegations were made for the purpose of disparaging Graham and its police officers in a public filing. Worse yet, whether intentionally or through sheer negligence, in this gratuitous disparagement, Plaintiffs' counsel simply fabricated allegations against individual Graham police officers Neudecker and Sakin. These officers have absolutely no relevance to the issues raised in Plaintiffs' motion, and as explained above, the specific allegations against them are false. Plaintiffs' should be held accountable for their false, gratuitous, public allegations against these officers.

Defensively, Plaintiffs should not and do not accuse Graham of participating in bad faith or of not being responsive. Graham promptly responded to Haddix's discovery letter in October 2021, and promptly addressed the concerns then raised by Plaintiffs. When Plaintiffs' resurfaced these issues months later, Graham responded within four days. Graham conferred with Plaintiffs to talk through the issues raised and fairly and reasonably responded to the concerns that Bornhorst raised, even though many of the

19

concerns were simply retreading discussion previously had between Biller and Haddix in October 2021. Graham supplemented its production the same day regarding the few issues raised in Haddix's letter that Graham had not previously been aware of. Not only is this objectively reasonable behavior, but it was exemplary. Biller, the lead counsel for Graham, was hospitalized unexpectedly for two days while traveling out of State between February 21 and February 25. Notwithstanding having a legitimate reason for delay, Biller and Banks reviewed the issues and engaged in a prolonged discussion with Bornhorst two days after Biller was released to reasonably address every issue Bornhorst raised from Haddix's letter. Graham's written responses demonstrate complete, good faith answers and responses, and Graham has produced thousands of documents more quickly and more thoroughly than have Plaintiffs. There is no reasonable justification for granting Plaintiffs the relief they request.

## II.     CONCLUSION

This Court warned Plaintiffs not to engage in retaliatory motion play. Plaintiffs did not listen. Their retaliation lacked in merit, and Plaintiffs' gratuitous and false accusations against police officers only recently introduced to this lawsuit, with absolutely no bearing on the motion *sub judice*, should not be tolerated. Graham prays the Court deny Plaintiffs' motion and order them to pay Graham's fees associated with its defense.

Respectfully submitted, this the 18th day of March 2022.

**ENVISAGE LAW**

By:  */s/ Anthony J. Biller*
Anthony J. Biller
NC State Bar No. 24,117
Adam P. Banks
NC State Bar No. 47,559
2601 Oberlin Rd, STE 100
Raleigh, NC 27608
Telephone: (919) 755-1317
Facsimile: (919) 782.0452
Email: ajbiller@envisage.law
Email: abanks@envisage.law
*Attorneys for the Graham Defendants*

**<u>Certificate of Compliance</u>**

I hereby certify that, excluding portions exempted by LR 7.3(d), this memorandum

complies with the word count and page limitations of LR 7.3(d).

By:    */s/ Adam P. Banks*
       NC State Bar No. 47559
       2601 Oberlin Rd, STE 100
       Raleigh, NC 27608
       Telephone: (919) 414.0313
       Facsimile: (919) 782.0452